CORNELIA M. BENEDICT AND OTHERS *vs.* AUGUSTUS S.
CHASE AND ANOTHER, ADMINISTRATORS, AND OTHERS.

New Haven & Fairfield Cos., Oct. T., 1889. CARPENTER, LOOMIS, BEARDS-
LEY, PRENTICE and J. M. HALL, Js.

*B* died while holden as an endorser upon notes of a corporation of which
he was a stockholder, to the amount of $600,000. The corporation not
being able to pay the notes as they matured, and a presentation of them
against *B's* estate rendering it insolvent, the plaintiffs, who were a por-
tion of the heirs of *B*, the others being minors, with the approval of
the administrators guaranteed bonds of the corporation to the amount
of $144,000, with the proceeds of which the corporation was able to
provide for the notes as they matured. The corporation six years after
failed, and the plaintiffs had to pay $47,000 on the bonds guaranteed by
them. It did not appear that the failure of the corporation had been
caused by any special misfortune, or that there had been anything be-
yond a steady decline in its condition. In an action against the admin-
istrators, claiming a legal liability on their part and an equitable liability
of the estate, it was held—

1. That the administrators were not liable at law.
2. That the peril in which the estate was placed created what the law would
   regard as a necessity for the interposition of the plaintiffs.
3. That by such interposition, by which the estate was saved from heavy
   loss, they acquired an equitable lien on the estate for the money which
   they were compelled to pay upon their guaranty of the bonds.
4. That it was not necessary to take any proceedings against the estate in
   the probate court, but that the claim could be made the subject of a
   suit in the Superior Court.

[Argued October 25th—decided October 30th, 1889.]

ACTION for the recovery of money at law and for equitable
relief; brought to the Superior Court in New Haven County.

The plaintiffs were Cornelia M. Benedict, Amelia C. Bene-
dict and Charlotte B. Hill, widow and two of the children of
Charles Benedict, deceased. The defendants were the ad
ministrators of his estate and minor heirs. The complaint
alleged that at the time of his death, on the 30th of Octo-
ber, 1881, the intestate was liable as endorser of a large
amount of notes and other paper of Mitchell, Vance & Co.,
a corporation located in the city of New York, of which he

was a large stockholder, to the amount of six hundred thousand dollars, which notes were then maturing, and if presented and allowed against his estate would have rendered it wholly insolvent; and that, for the purpose of relieving the estate, the plaintiffs, being then all the parties interested who were of age and legally capable to act, entered into an agreement with the corporation that they would guarantee its bonds to the amount of $144,000, the proceeds of which should be used in taking up the notes, other bonds being guaranteed by other stockholders, and that the bonds were issued and guaranteed, and the notes paid with the proceeds; that the corporation failed in 1887 while a portion of the bonds guaranteed by the plaintiffs remained unpaid, and that in consequence thereof they had been compelled to pay upon them the sum of $47,699, which the administrators, upon demand made, had refused to pay; and that the estate of Benedict was being settled as a solvent estate, and that the time limited for presenting claims against it had long since expired. Judgment at law was prayed for against the administrators for the amount so paid, and for equitable relief.

The defendants demurred to the complaint on the ground that the Superior Court had no original jurisdiction in the matter, but that it belonged exclusively to the probate court in which the estate was being settled. The demurrer was overruled and the defendants then filed a denial. Upon the trial the following facts were found.

Charles Benedict died on the 30th of October, 1881, and on the 14th day of November, 1881, the defendants A. S. Chase and Gilman C. Hill were appointed administrators of his estate by the court of probate for the district of Waterbury. The estate was represented solvent, and the court limited six months from and after the 14th day of November in which to present claims against it.

Benedict died intestate, leaving a widow, Cornelia M. Benedict, and two daughters, Amelia C. Benedict and Charlotte B. Hill, plaintiffs in this action, and minor children of a deceased daughter, heirs at law to his estate.

At the time of his death he was endorser of a large amount of notes and drafts of Mitchell, Vance & Co., a corporation located in New York, and had guaranteed Dennis Wilcox, who had also endorsed notes and drafts of Mitchell, Vance & Co., against loss. The total amount of the endorsement and guarantee was $600,000. Mitchell, Vance & Co. at the decease of Benedict were supposed to be solvent, but could not meet these notes when they matured without renewals, and for the purpose of enabling the corporation to renew its paper without such endorsement and guarantee they entered into an agreement with the plaintiffs, by which the plaintiffs were to guarantee bonds to be issued by the corporation to an amount equal to one half the stock which Benedict at the time of his death owned and held in the corporation, which amount of guaranteed bonds was $144,000.

These bonds were used by Mitchell, Vance & Co. in taking up their obligations which Benedict had endorsed or guaranteed, which were paid by them upon maturity. These notes and drafts were paid by the corporation and not by the plaintiffs, nor were they in any manner assigned or conveyed to the plaintiffs, nor were they ever presented against Benedict's estate, nor any claim made upon the estate therefor. The bonds were so guaranteed by the plaintiffs on or before the 1st of December, 1881. In the summer of 1887 Mitchell, Vance & Co. failed in business, and a receiver was appointed to settle the affairs of the corporation, and on the 1st day of January, 1888, the plaintiffs were obliged to pay to the receiver the sum of $47,699, being one half the amount of the bonds so guaranteed by them still outstanding and unpaid by the corporation ; the corporation also settling its debts for fifty cents on the dollar. The plaintiffs in guaranteeing the bonds supposed they were acting for the benefit of the estate, and relieving it from its liability by reason of the endorsements and guarantees of Benedict in his lifetime, so that no claim therefor would ever come against the estate ; believing that Mitchell, Vance & Co. would fully pay and discharge the bonds so guaranteed by them.

The estate of Benedict is now in process of settlement in

the probate court. The plaintiffs have presented their claim and made demand of the administrators for payment thereof.

Benedict at the time of his decease was the largest stockholder in the corporation of Mitchell, Vance & Co., and the plaintiffs in making the guaranty of bonds acted as they supposed for the benefit of the estate, to preserve the stock as an asset of value to the estate, as well as to relieve the estate from liability for the endorsements.

If the notes so endorsed by Benedict had matured as a claim against his estate, and been presented against it, it would have subjected the estate to a much larger liability, and rendered it insolvent if compelled to pay them. The bonds were so guaranteed with the knowledge and approval of the administrators, so far as they had any power to approve it.

Upon these facts the case was reserved for the advice of this court.

*S. W. Kellogg*, for the plaintiffs.

1. The Superior Court had jurisdiction. It was not a claim against Mr. Benedict personally nor had it any existence before his death. It came into existence after his death and was against his estate only, or against the administrators on their liability, and was therefore a matter with which the probate court had nothing to do.

2. The plaintiffs are entitled to judgment against the administrators for money paid for the estate. It was their duty to take the necessary steps to relieve the estate from liability. *Davis* v. *Vansands*, 45 Conn., 600. This being so, and the guaranty of the bonds being made with their approval, it was money paid for their benefit as administrators. 2 Greenl. Ev., §§ 108, 113, 114; *Exall* v. *Partridge*, 8 T. R., 308; *Bailey* v. *Bussing*, 28 Conn., 455. The claim could not have been allowed if it had been presented against the estate as the claim of a creditor. *Hawley* v. *Botsford*, 27 Conn., 80; *Bacon* v. *Thorp*, id., 251.

3. But if the plaintiffs are not entitled to a judgment at law against the administrators, a court of equity will grant

them relief. What they did was for the benefit of the whole
estate, with the approval of the administrators, to relieve it
from an overwhelming liability. It is, to say the least, very
ungracious on the part of those representing these minor
heirs to object to the allowance of the sum paid by the
plaintiffs as a charge against the whole estate, for if they
had not taken the action they did there would have been
no estate left for these minor heirs to share in. This moun-
tain load of liability was removed from the estate, by the
heirs legally capable of acting, for the benefit of the whole
estate, and the amount to which the estate will be subjected,
if this claim of the plaintiffs is made a charge against the
whole estate, is less than one twelfth of the amount of the
original liability of which the estate was relieved by their
action. It is not true that courts of equity can never take
action in relation to the settlement of estates before a court
of probate. When there is no remedy at law, and the court
of probate has no power under the law, as in a case like
this, it is the proper function and the duty of a court of
equity to grant relief and do justice between the parties.
It is a golden maxim of our jurisprudence that wherever
there is a wrong there is a remedy. *Booth* v. *Starr*, 5 Day,
419; *Hawley* v. *Botsford*, 27 Conn., 80; *Bacon* v. *Thorp*, id.,
251; *Davis* v. *Vansands*, 45 id., 600.

*C. W. Gillette* and *G. E. Terry*, for the defendants.

1. The plaintiffs are not entitled to the equitable relief
prayed for, because the Superior Court has no original juris-
diction to grant any such relief, for, as the finding shows,
the estate is still in process of settlement in the probate
court, and all questions relating to the settlement of the
estate, or to the administration account, are exclusively
within the jurisdiction of that court, and can only come to
the Superior Court by way of appeal. *Pitkin* v. *Pitkin*, 7
Conn., 315; *Bailey* v. *Strong*, 8 id., 278; *Beach* v. *Norton*,
9 id., 182.

2. The plaintiffs are not entitled to a judgment at law
against the administrators for the money paid by them upon

the guaranteed bonds. The only claim for which the estate could have been liable was by reason of Mr. Benedict's endorsements of the paper of the corporation, and this only in the event that the corporation had failed to pay, and the endorser had been properly notified. Had these claims ever matured they might have been presented as lawful claims against the estate, and then it would have been the duty of the administrators to allow or disallow them. But no such claims were ever presented by the holders of the paper or any one else. They could not have been, because they were paid by the corporation with money loaned it by the plaintiffs, and the plaintiffs have sustained loss thereby. They have no remedy against the estate or administrators, because the endorsed papers never became a liability against the endorsers, and if they had, these plaintiffs never acquired any title or interest therein, by assignment or otherwise, and no claim therefor has ever been presented to the estate.

3. But it is claimed that the plaintiffs were obliged to pay a portion of the bonds they had guaranteed, which enabled the corporation to pay their notes endorsed by Mr. Benedict, and thereby relieved the estate from a very large claim. But it appears that the corporation, at the time of the decease of Mr. Benedict, was solvent, and only desired to gain time by way of renewal of their paper, but being unable to procure his endorsement, desired to obtain some substitute for it, and there was no thought on the part of the plaintiffs at the time they guaranteed the bonds that the corporation would be unable to pay them at maturity. What particular bearing the knowledge or approval of the administrators has upon the case it is difficult to understand. It is entirely immaterial whether they approved or disapproved. If it is to be argued that because they did approve so far as they had any power to do it, they thereby bound the estate for the payment of any portion of the bonds, then we claim that they had no such power. Their duties were to receive claims lawfully presented against the estate and either allow or disallow them. *Rhodes* v. *Seymour*, 36 Conn., 1. And this claim of the plaintiffs was not present-

ed until after the time limited for presenting claims had expired.

CARPENTER, J. There are two facts essential to the plaintiffs' right to recover: 1st, that Benedict's estate was in peril; 2d, that it was relieved of that peril by the plaintiffs. The finding does not state either fact in so many words. Are they in effect stated? If so, we can dispose of the case; if not, we must remand the case for a more specific finding.

There are two considerations which incline us to regard the finding as sufficient. 1. The case has been heard upon its merits without objection from either party, or suggestions from the court. 2. Both parties have assumed that both facts exist, and have argued the case upon that assumption.

A careful consideration of the facts stated leads us to the conclusion, if not as a necessary inference, yet as a reasonable and proper one under the circumstances, that the estate was in peril, and that the plaintiffs at their own expense rescued it from its liability.

Benedict in his life time assumed a contingent liability for Mitchell, Vance & Co., a New York corporation, of which he was a stockholder, to the amount of $600,000; which liability was on his estate at the time of his decease. The corporation was unable to meet the paper endorsed by Benedict as it matured, without renewals, and no renewals could be had. That finding seems to exclude the supposition that the corporation could meet its paper, unless aided by the estate or by some one interested in it. In less than six years the corporation failed. That it was on the verge of insolvency, if not actually insolvent, is evident from the fact that it was unable to meet its maturing liabilities. Something must be done, or that paper will inevitably be presented against the estate. It necessarily follows that the estate was in imminent peril. Presentation meant payment, and payment by the estate meant insolvency.

Did the plaintiffs relieve it of its peril? In about one month after Benedict's death the plaintiffs guaranteed bonds of the corporation to the amount of $144,000. That was

done, as it is found, "for the purpose of enabling the corporation to renew its paper without such endorsement and guarantee." It is also found that "the bonds were used by said Mitchell, Vance & Co. in taking up their obligations which said Benedict had endorsed or guaranteed." A portion of the bonds were outstanding when Mitchell, Vance & Co. failed, and the plaintiffs were obliged to pay thereon $47,699. Had they advanced $144,000 in cash instead of guaranteeing bonds, and the money had been used to take up the indorsed paper as it matured, it would have conclusively appeared that they relieved the estate. Is the fact that they accomplished the same result by loaning their credit any less conclusive? In either case it may be said that time is of some importance; that insolvency may have overtaken the corporation after the death of Benedict; so that it is uncertain whether the plaintiffs in fact benefited the estate. The reply is that there is no presumption to that effect; on the contrary, if insolvency originated subsequently, the presumption is that the defendants by an appropriate plea would have called the attention of the court to that fact. In the absence of any claim on that subject, the court is not bound to take into consideration mere possibilities. It is possible that the property of the corporation may have been destroyed by fire with no insurance; that they met with heavy losses otherwise, and the like; but these are not subjects for conjecture, but are matters to be proved. The court is not bound to inquire whether the defendants have a defense which they have not chosen to interpose. It is proper and according to the usual course for us to take the facts as the parties present them to us; and we can safely interpret them as both parties do, more especially if they are hardly surceptible of any other rational interpretation. We conclude therefore that the estate was in great peril and that the plaintiffs rescued it.

The time had come when something must be done. The estate could not legally take the risk. The administrators personally might do so, but they were not bound to, and could not be expected to. Two thirds in interest of the

heirs could and did lend their aid; the remaining third, being minors, did not. The plaintiffs did not act officiously or unreasonably. On the contrary, it may be characterized as good business management. The result proved that while there was a loss, yet that it was doubtless much less than the estate would have suffered had nothing been done. This is a suit to reimburse the plaintiffs from the assets of the estate. The minor heirs defend. The case is reserved for the advice of this court.

What is it that the plaintiffs ask? They do not ask, as may be supposed from the defendants' brief, that the defendants may be compelled to pay a part of the expenses of a losing venture; neither do they ask any compensation for the risk assumed. They simply ask that the fund which they have saved by a successful venture may refund to them the expense before distribution.

The first defense interposed is a demurrer, raising the claim that the Superior Court has no jurisdiction; that it is one of those matters within the jurisdiction of the court of probate. Without saying that the court of probate could not have passed upon this matter, we are inclined to regard it as a disputed claim against the estate, not, it is true, an ordinary claim, but still a claim on which a suit may properly be brought to the Superior Court, especially as it is claimed that the administrators are liable at law. Whether an estate being settled as a solvent estate is indebted or not, legally or equitably, when it is disputed, is a question for the courts. If an administrator incurs expense in the course of his duty, the question whether he is to be repaid from the estate is a question for the court of probate. If, in this case, the administrators had done what the plaintiffs did, the question whether they should be reimbursed would be a question for the court of probate. Other parties having volunteered, they bring a suit claiming that the administrators are liable at law, and if not, then in equity. The question of legal liability seems clearly to be a question for the Superior Court. We think that the question of liability in equity is also within the jurisdiction of that court.

The next question is—are the administrators liable at law? They had no power to bind the estate in a matter of this kind. Any previous request, or subsequent promise, would have been of no avail. What they could not do they could not authorize others to do; and it is not claimed that they have made themselves personally liable.

There can be no remedy at law against the defendant heirs, for they were incapable of contracting, and made no contract in fact. No legal duty rested upon them, so that there is no ground on which a request can be implied. For the same reason they are not liable to a contribution at law.

Have the plaintiffs any equitable remedy? It will be noticed that the defendants' brief deals almost exclusively with a contract liability, or a personal liability on some other ground. An equitable claim upon the fund, as distinguished from a claim against the defendants personally, is hardly alluded to. We agree with them that no judgment against them *in personam* should be rendered; but whether the plaintiffs are not entitled to be reimbursed from the fund which they have saved is quite a different question. No case has been referred to, and we are unable to find any directly in point. A simple statement of the case shows such strong equities that authorities are hardly needed, and little else need be said by way of argument.

There are analogous cases however, which in principle strongly support the plaintiffs' claim. When a cargo at sea is in peril a portion of it is frequently sacrificed to save the balance. In such cases the doctrine of general average compels the freight that is saved to contribute towards making good the loss. Here the whole estate was in peril. The plaintiffs voluntarily sacrificed their own private funds to save it. They in fact saved it. Why should the defendants share in the whole estate as though it had never been in peril, and compel the plaintiffs to bear the whole burden?

So also with the doctrines of apportionment and contribution. They are often applied, especially in cases of burdens upon real estate, where, *ex æquo et bono*, the party is entitled to relief. See Story's Equity Jurisprudence, §§ 477, 478,

479, and 483. Few cases can be supposed in which the equi-
ties are stronger than in the present. Take another class of
cases; a fund, in which several persons are interested, is at-
tached, or involved in litigation, requiring a heavy expense
to defend it, or settle its *status*, and the like. Usually the
fund is charged with the expenses, and the balance only is
distributed. These cases and others that might be men-
tioned are decided upon principles that are fairly applicable
to the present case. We do not believe it will be unjust to
apply them to this case.

Once more. Suppose these administrators, as they might,
although not bound to, had risked their private fortunes in
doing precisely what these plaintiffs did, and had thereby
saved the estate at an expense to themselves of $50,000;
would these heirs — plaintiffs and defendants — have been
heard, to say—"You did it voluntarily, no law required it;
therefore you must bear the loss while we will enjoy the es-
tate?" Is it so that an administrator, prompted by no duty,
but simply by a desire to benefit the estate, incurs an ex-
pense whereby it is in fact benefited, may not be reim-
bursed? The case before us can hardly be distinguished in
principle from the case supposed. The administrators did
not act, but with their approval the plaintiffs did, and jus-
tice requires that they should be reimbursed.

The Superior Court is advised to render judgment for the
plaintiffs, to be paid from the estate.

In this opinion LOOMIS, PRENTICE and J. M. HALL, JS.,
concurred; BEARDSLEY, J., dissented.