STEPHEN B. PALMER III *v.* HARTFORD NATIONAL BANK
AND TRUST COMPANY ET AL., TRUSTEES (ESTATE
OF WILLIAM N. PALMER)

CAROL R. PALMER ET AL. *v.* HARTFORD NATIONAL BANK
AND TRUST COMPANY ET AL., TRUSTEES (ESTATE
OF WILLIAM N. PALMER)

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, JS.

Argued January 7—decided February 23, 1971

*John C. Dennis,* for the appellants (defendants) in each case.

*James O. Shea,* for the appellees (plaintiffs) in each case.

THIM, J. This is an appeal from a judgment in favor of the plaintiffs, granting equitable relief in the nature of damages for expenses incurred in benefiting a trust fund. The trust fund here involved is a testamentary trust created by the will of the late William N. Palmer. The present case is, in actuality, two cases. The first was brought by Stephen B. Palmer III against the named defendants. The second was filed by Carol R. Palmer and Ann Palmer Johnson, also against the named defendants. Both complaints are identical in substance, and the defendants filed identical answers and special defenses to each complaint. The cases were joined for hearing before the Court of Common Pleas, all parties stipulating that "any judgment rendered by the Court in one of the above actions shall be binding in both." We will, therefore, on this appeal, treat the cases as though only a single case was involved. The plaintiffs, Stephen B. Palmer III, hereinafter referred to as Stephen Palmer, Carol R. Palmer, and Ann Palmer Johnson, are beneficiaries under the trust. The plaintiff Carol Palmer is the guardian of a minor beneficiary. The defendants, the Hartford National Bank and Trust

Company and Jesse Stinson, are the trustees of the trust, and are parties in that capacity alone.

In the present action the plaintiffs claim that they have benefited the trust fund, and they invoke the powers of equity to declare the expenses thereby incurred to be just, and to order that they be paid out of the trust fund. The defendants, in their answer, denied the plaintiffs' claims and submitted, by way of two special defenses, that the Court of Common Pleas lacked jurisdiction, both to order counsel fees from the trust fund and to hear the case. All the facts were stipulated. The court ruled in favor of the plaintiffs on the issue of liability but awarded no damages. The defendants filed an appeal and an assignment of errors in this court from that judgment. We dismissed that appeal, noting that, no damages having been assessed, the judgment was "neither a complete nor a final judgment." *Palmer* v. *Hartford National Bank & Trust Co.,* 157 Conn. 597, 253 A.2d 28. On return to the Court of Common Pleas, another judgment was rendered awarding damages. The plaintiff Stephen Palmer was awarded $4934.35 plus interest, and the plaintiffs Carol R. Palmer and Ann Palmer Johnson were jointly awarded $3055.50 plus interest, a total award of $7989.85 plus interest from December 3, 1963. The defendants appealed from that judgment, assigning as error: (1) The court's conclusion that the plaintiffs' attorneys had performed services payable from the trust estate; (2) the court's conclusion that it had authority to assess attorneys' fees, on an appeal from a probate order, against the trust res; and (3) the assumption of jurisdiction over a trust res and ordering payment therefrom. All assignments of error have been briefed.

The following pertinent facts were stipulated and

found. The plaintiffs were three of the seven beneficiaries under the testamentary trust of William N. Palmer. Among the assets of the trust was a large tract (approximately 195 acres) of undeveloped real estate in Stonington. That land produced less income than the amount of the annual town real property tax. An offer of $100,000 for the entire tract was received by the trustees and Stephen Palmer was advised of that offer by Jesse Stinson on December 30, 1959. Immediately thereafter, Stephen Palmer conferred with the defendants and advised them that he did not consider the offer acceptable as it was below the fair market value of the property. Stephen Palmer retained legal counsel to oppose the proposed sale of the land. In January, 1960, the above-mentioned offer was reduced to writing. On February 5, 1960, Jesse Stinson notified Stephen Palmer's mother, by mail, that the trustees had accepted a deposit on the property with regard to the offer of $100,000. The defendants, on March 4, 1960, notified Stephen Palmer, in effect, that they intended to accept the offer and to request a hearing before the Stonington Probate Court on the matter. In March, 1960, the entire tract of 195 acres was appraised, by a Stonington appraiser, at $150,760. The assessor of the town, shortly thereafter, appraised the land at $155,830. The plaintiff Stephen Palmer, through his attorneys, had the property appraised, and that appraiser set the value of the land at $224,000. During the next six months numerous conferences were held between representatives of Stephen Palmer, the defendants, and the prospective purchaser. These conferences were initiated by the plaintiff Stephen Palmer. In April, 1960, the prospective purchaser increased his offer to $115,000 for a por-

tion of the tract. Stephen Palmer continued to oppose the sale as he considered the new offer also to be too low. On June 2, 1960, the defendants filed an application in the Probate Court for authorization to sell the entire tract at private sale. The application recited no sale price. At about that time the plaintiffs Carol Palmer and Ann Palmer Johnson retained counsel. A Probate Court hearing was held on June 21, 1960. At that point the defendants had received offers totaling $144,000 for the entire tract. The attorneys representing all three plaintiffs opposed the sale at that price. The Probate Court then entered an order authorizing the trustees to sell the entire tract of land in accordance with the application. The plaintiffs filed a timely appeal from the probate order to the Superior Court. While the appeal was pending, further conferences were held between the plaintiffs, the defendants, and the prospective purchaser. On June 19, 1961, the offer was increased to $165,000 for the entire tract, but on September 14, 1961, that offer was withdrawn. In February, 1962, after further conferences between the same parties, the same prospective purchaser again offered $165,000, this time for a large portion of the whole tract. The appeal to the Superior Court was then withdrawn. The sale of that portion was thereafter completed pursuant to the final offer. The remaining portion of the tract which was not sold is valued at $20,000. All three plaintiffs rendered accounts of their expenses in behalf of the trust to the defendants, and demanded payment. Those demands have not been met. The court concluded that the efforts of the plaintiffs resulted in substantial benefits to the estate in that approximately $85,000 of increased value was realized for the estate.

The situation here can best be determined if we first comprehend that situation exactly. Put simply, the plaintiffs allege that because of their actions the trust fund benefited by the amount of $85,000, or the difference between the original offer which the trustees were wont to accept and the final sale price plus the value of the portion of the land not sold. They claim that equitable principles apply; that those principles permit the recovery of their expenses; that the recovery can be from the trust fund benefited; and that, therefore, a court of equity has jurisdiction to grant them relief.

As to the applicable principles, "the general rule that a court of equity will, in its discretion order an allowance of counsel fees . . . as between solicitor and client to a complainant . . . who at his own expense has maintained a successful suit for the preservation, protection or increase of a common fund . . . has been applied . . . in litigation respecting an express trust, brought by a beneficiary thereof". 54 Am. Jur. (1970 Cum. Sup. 82), Trusts, § 636.11; note, 9 A.L.R.2d 1132, 1150 § 5; 54 Am. Jur. 122, Trusts, § 146. A slightly different statement of the rule adds that, in addition to bringing a successful suit, the beneficiary may recover if he "in good faith, and at his own expense, . . . takes proper proceedings, to save it [a common trust fund]". Note, 49 A.L.R. 1149, 1161, ¶ III (b); see note, 107 A.L.R. 750; 54 Am. Jur., Trusts, § 146.

A leading case on this principle is *Trustees* v. *Greenough,* 105 U.S. 527, 26 L. Ed. 1157. Francis Vose was a bondholder under a public trust for the sale of land. He brought suit against the trustees, alleging, among other things, that they were selling the land at prices which were too low. His suit was successful, and as a result the fund derived great

monetary benefit. Thereafter, Vose brought a petition in equity, stating that he had borne all the expenses of litigation, and praying for (p. 529) "an allowance out of the fund for his expenses." His request was allowed. On appeal, the United States Supreme Court stated, in part (p. 532): Where there is benefit to all through the expense and trouble of one, "if the complainant is not a trustee [which he was not], he has at least acted the part of a trustee in relation to the common interest. . . . It would be very hard on him to turn him away without any allowance . . . . It would not only be unjust to him, but it would give to the other parties entitled to participate in the benefits of the fund an unfair advantage." The court further stated (pp. 532, 533): "[W]here one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from destruction . . . , he is entitled to reimbursement". See also *United States* v. *Equitable Trust Co.,* 283 U.S. 738, 744, 51 S. Ct. 639, 75 L. Ed. 1379; *Hobbs* v. *McLean,* 117 U.S. 567, 582, 6 S. Ct. 870, 29 L. Ed. 940; *Wallace* v. *Fiske,* 80 F.2d 897, 903 (8th Cir.). This principle has been adopted or recognized in many jurisdictions. See *New England Trust Co.* v. *Paine,* 317 Mass. 542, 558, 59 N.E.2d 263; *In re Atwood's Trust,* 227 Minn. 495, 35 N.W.2d 736; *Commercial Trust Co.* v. *Mason,* 119 N.J. Eq. 376, 182 A. 875; *Kinney* v. *Uglow,* 163 Ore. 539, 584, 98 P.2d 1006; *Hempstead* v. *Meadville Theological School,* 286 Pa. 493, 495–96, 134 A. 103.

The principle of reimbursing a party for expenses which he has incurred in benefiting a trust fund of which he is a beneficiary is also recognized in Connecticut. In *Phillips* v. *Moeller,* 148 Conn. 374, 376, 170 A.2d 904, the plaintiffs, who were seeking

damages and counsel fees, were denied their request because "there was no evidence that the trust estate was . . . in any peril or that the plaintiffs incurred expense to ward off a peril to the estate or to secure a common benefit to the beneficiaries." It is clear that had the proper situation been shown, the expenses could have been awarded. Even earlier, and in a case concerning the same trust, the court, speaking of the doctrine of contribution, noted "that doctrine assumes that those who incur expense are interested in the warding off of a peril, or the securing of a benefit, which is common to themselves and to those whom they are seeking to compel to share in that expense." *Johnston* v. *Moeller,* 93 Conn. 590, 594, 107 A. 566.

It thus seems to be evident that the rule of equity, and of trusts, through which the plaintiffs seek to recover, does indeed exist. It is, in fact, widely recognized. Our own court has, in fact, cited the doctrine with approval, and has, on occasion, allowed its application. See *Benedict* v. *Chase,* 58 Conn. 196, 20 A. 448; see also *Union & New Haven Trust Co.* v. *Osterweis,* 9 Conn. Sup. 11. The doctrine appears to be rarely applied, but nonetheless universally recognized, unless varied by statute, and its infrequent application seems to be due to the requirement that there be an actual benefit to the estate. See *Simmons* v. *Hubbard,* 50 Conn. 574, where no such expenses were allowed in a contest to construe a will. There was no direct benefit to the estate and, therefore, the principle would not have applied.

"[A]llowances of this kind, if made with moderation and a jealous regard to the rights of those who are interested in the fund, are not only admissible, but agreeable to the principles of equity and jus-

tice." *Trustees* v. *Greenough,* supra, 536. With this statement we agree. To allow recovery in a situation such as that in the present case is equitable, and to deny recovery in such a situation would be unjust. We find, therefore, that the action brought by the plaintiffs is equitable in nature and one for which a remedy clearly lies. Assuming, arguendo, that the court had jurisdiction to hear the case, it could have ordered that the plaintiffs be reimbursed.

The next question concerns the determination of the proper party to bear the expenses incurred. The defendants contend that the reimbursement cannot come from the trust fund and that the court had no jurisdiction so to order. There have been many statements on this point. Generally, where services have been rendered by a beneficiary, and "[i]f it was for the benefit of the [trust] estate as a whole, costs and fees will be allowed out of the trust fund". 54 Am. Jur. (1970 Cum. Sup. 86), Trusts, § 636.23. Similar statements include: "Where the services protect a common fund, . . . it is liable for costs and expenses, including counsel fees incurred." *Hempstead* v. *Meadville Theological School,* supra. Since the purpose of the litigation was with a view "to enriching the *corpus* of the estate, [the counsel fees] should be paid out of the *corpus.*" *Commercial Trust Co.* v. *Mason,* supra, 377.

In at least one case, our court has had occasion to pass on this doctrine, although not in a trust situation. In *Benedict* v. *Chase,* supra, several, but not all, of the heirs under a will undertook to rescue the estate. The decedent had guaranteed loans of a corporation. At the decedent's death that corporation was on the verge of insolvency and the loans guaranteed by the decedent remained unpaid. In order to prevent the corporation from becoming

insolvent and making the estate liable on the loans, the heirs guaranteed bonds of the corporation, thus enabling that corporation to redeem the loans guaranteed by the decedent. After redeeming most of the loans, the corporation became insolvent. As a result of the heirs' actions the estate was relieved of most of the burden. The heirs, however, remained liable on some of the bonds which they had guaranteed. They brought suit against the administrator in the Superior Court to recover their costs. Judgment was rendered for the plaintiff heirs and the administrator appealed. We there held that the administrator should pay the expenses of the heirs and that they were "to be paid from the estate." *Benedict* v. *Chase,* supra, 206. In *Union & New Haven Trust Co.* v. *Osterweis,* 9 Conn. Sup. 11, 15, the court *(Quinlan, J.)* noted: "There is reasonable authority . . . for the allowance of counsel fees from the fund which has been protected or preserved for the benefit of others, on the theory that those who have shared in the benefits should contribute to the expense."

There are many reasons why the fund should be made to bear such expenses. The basic theory is that all of the beneficiaries are benefited, yet the expense of that benefit has been borne by less than all. It has been held that in such a situation, the acceptance of the attorney's services by the nonparticipating beneficiaries may be implied. *Wallace* v. *Fiske,* 80 F.2d 897, 904 (8th Cir.). The method to attain the goal of equalizing the expenses has often been contribution, that is, each nonparticipating beneficiary defrays a share of the expenses equal to his proportionate share in the fund. "He has worked for them as well as for himself; and if he cannot be reimbursed out of the fund itself, they ought to

contribute their due proportion of the expenses which he has fairly incurred. To make them a charge upon the fund is the most equitable way of securing such contribution." *Trustees* v. *Greenough, supra,* 532. Reimbursement from the fund is the most equitable approach because the trust fund itself has been benefited. Until it is distributed the beneficiaries have derived no benefit. Hypothetically, if the fund becomes insolvent, those beneficiaries may never receive benefit from the increase in the fund. Thus, not the beneficiaries, but the fund itself, should be made to pay.

That the fund itself should pay has a direct bearing on the necessary parties. If we were to construe this reimbursement as one owed by the beneficiaries, but payable out of the fund, it would seem that those beneficiaries who were not plaintiffs would be necessary parties defendant to any action to recover expenses. By our construction, however, the fund is to be assessed for the benefit to it. The trustees of a fund have a duty to protect it. *O'Leary* v. *McGuinness,* 140 Conn. 80, 88, 98 A.2d 660. They hold the legal title to that fund; *O'Leary* v. *McGuinness, supra,* 87; and they must be loyal to it. *Conway* v. *Emeny,* 139 Conn. 612, 621, 96 A.2d 221. A trustee may be sued without joining the beneficiaries of that trust. General Statutes § 52-106. Finally, the trustees represent the beneficiaries of the trust. *O'Leary* v. *McGuinness, supra,* 88. We, therefore, hold that where, as here, an equitable action is brought against the trustee of a fund by some beneficiaries seeking reimbursement from that fund, the other beneficiaries need not be parties to the action unless their interests are in some way adverse to those of the trustee. To the trustee is assigned the duty of protecting the rights of the beneficiaries

and it is unnecessary to require additional parties unless their interests conflict with those of their protector.

The defendants argue that this action should not have been brought against the trustees as such. The plaintiffs, however, argue that § 52-202 of the General Statutes permits the trustee to be sued in that capacity alone. We note first that § 52-202 does not apply to equitable actions. The statute only contemplates expenses incurred by an executor, administrator, guardian or trustee and cannot be made to apply to expenses incurred by interested parties. *Brown* v. *Eggleston,* 53 Conn. 110, 117, 2 A. 321. Here, the trustees have incurred no expense, and thus the statute does not apply.

"The only matters arising out of the acts of an administrator [or trustee] for which an action lies against him *as such* are those 'growing out of moneys paid or services rendered for the estate.' . . . [Rev. 1930], § 5640 [now General Statutes § 52-202]." (Emphasis added.) *Main* v. *Norman,* 130 Conn. 600, 601, 36 A.2d 256. Although § 52-202 does not apply, it does aid us in reaching our decision on this matter. That statute evinces a legislative intent to favor a direct route. Thus, where at common law a suit would have been brought against the trustee in his individual capacity, with the trustee then, in turn, seeking reimbursement from the trust fund, § 52-202 allows a direct action against the fund; that is, against the trustee as such. We see no reason why an equitable action should be treated any differently. Here, as we have determined, the fund is eventually liable if there is a liability at all. In fact, it is unlikely that, on the facts as here presented, a judgment would lie against the trustees personally in any event. Unlike

a debt which a trustee has incurred for the estate, they have here incurred nothing and they have derived no personal benefit. We thus hold that the trustees as such are the proper parties where an equitable remedy is sought against the fund itself.

To this point we have determined that the actions of the Court of Common Pleas in this case were appropriate. We have yet to determine, however, whether, in any event, that court had jurisdiction over this matter.

The defendants argue that the plaintiffs incurred their expenses in challenging a probate order authorizing a sale, and note that § 45-238 of the General Statutes, which empowers the Probate Court to authorize such a sale, does not make provision for an allowance of counsel fees. We believe that this claim demonstrates that the defendants have somewhat misconstrued the plaintiffs' claims. Reading the plaintiffs' complaint in toto it seems clear that the fees sought were neither strictly for a particular contestation of an application to sell, nor for an appeal from such an order. Rather, the claim is an overall claim for services incurred in benefiting that estate. Those services included the hiring of an appraiser and numerous negotiations with the trustees and the prospective purchaser, in addition to the acts of contesting the application for permission to sell and the filing of an appeal from the Probate Court after the granting of the application. The litigation was important in that it opened the door for negotiations, but provided little benefit, for it was not pursued to any conclusion. It did, however, prevent the sale at the lower price and it provided the plaintiffs with an opportunity to pursue the matter with all the parties. Those expenses were thus integral portions of the expenses incurred

in benefiting the estate, but by no means are they the expenses claimed in the present action. The expenses claimed were the aggregate of all of the expenses incurred in benefiting the trust to the extent of $85,000.

To go a step further, we observe that the allowance of fees, out of a fund, to a beneficiary who has, at his own expense, benefited that fund, is a corollary to the allowance of similar administration expenses to a trustee. As we have quoted from *Trustees* v. *Greenough,* 105 U.S. 527, 26 L. Ed. 1157, a beneficiary who aids a trust fund acts the part of a trustee of the common interest. While the beneficiary, unlike the trustee, must, in the end, be proven to have been right in his claim, if he is successful the fund receives a benefit and it, in turn, bears the cost of that benefit as an administration expense. Thus, the right to recover need not be provided for in the statute under which the litigation arose, if indeed any statute is involved.

The fact that the right is not found within the statute, but rather, in general equitable doctrines, tends to substantiate the defendants' claim that the Probate Court, and the Superior Court sitting in review as a court of probate, cannot order the payment of such expenses. The court of probate has no common-law jurisdiction. *McDonald* v. *Hartford Trust Co.,* 104 Conn. 169, 190, 132 A. 902; *St. Leger's Appeal,* 34 Conn. 434, 446; 1 Locke & Kohn, Conn. Probate Practice § 38. It may only act as authorized by statute. Id. The Superior Court, sitting in review of the Probate Court, may not exercise powers beyond those of the Probate Court. *Carten* v. *Carten,* 153 Conn. 603, 614, 219 A.2d 711; 1 Locke & Kohn, op. cit. § 215.

In *Benedict* v. *Chase,* 58 Conn. 196, 204, 20 A. 448,

a matter somewhat similar to the present case, this court declined to pass upon the question whether the Probate Court could have entertained an equitable petition for the reimbursement of heirs. Likewise, in *Johnston* v. *Moeller,* 93 Conn. 590, 596, 107 A. 566, this court found it "unnecessary to determine whether the court of probate would have had jurisdiction to make an order directing that the appellants be reimbursed for their expenditures from the trust fund." We believe that the resolution of that issue should no longer be avoided.

A Probate Court judge is not a chancellor. His only equity powers are those which are incidental to, and connected with, the settlement of a particular estate. "[T]he equity which the Probate Court administers must grow out of and be inseparably connected with the matter the court is acting upon". 1 Locke & Kohn, op. cit., p. 178; see *Hewitt's Appeal,* 53 Conn. 24, 37, 1 A. 815. The situation in the present case, not involving litigation fees in a matter presently before the court, does not arise out of a matter upon which the Probate Court is acting. Certainly, the mere fact that the defendants represent a testamentary trust, which is under the control of the Probate Court, does not bear such a relationship. Were that the case, then all matters concerning testamentary trusts would be matters before the Probate Court and all matters having any bearing upon such trusts would be within that court's jurisdiction. The situation, therefore, in which the Probate Court may exercise equitable jurisdiction must be one which arises within the framework of a matter already before it, and wherein the application of equity is but a necessary step in the direction of the final determination of the entire matter. A similar situation arises when a question of title

must be resolved within a probate matter. The Probate Court may not decide title. *Lockett* v. *Doyle,* 148 Conn. 639, 643, 173 A.2d 507; *Wilson* v. *Warner,* 84 Conn. 560, 565, 80 A. 718. Where that decision is incidental to a distribution which is before the Probate Court, however, that court may decide title. *Brownell* v. *Union & New Haven Trust Co.,* 143 Conn. 662, 666, 124 A.2d 901; *Wilson* v. *Warner,* supra. Similarly, the Probate Court may not decide equities unless they are incidental to a matter before it.

Other reasons further commend this rule. A court of probate is unable to award damages. *Phillips* v. *Moeller,* 147 Conn. 482, 488–89, 163 A.2d 95. It would, therefore, be inappropriate to allow a court to entertain an action in which it is without the power to grant the relief requested. Further, in an equitable action, facts must often be found. In the present case they were stipulated, but that need not always be the situation. Often a jury may be requested to find those facts. Yet no jury trial is permitted in cases of this type, in either the Probate Court or in the Superior Court on an appeal from probate. *Dettenborn* v. *Hartford-National Bank & Trust Co.,* 121 Conn. 388, 393, 185 A. 82. The Probate Court may not adjudicate complex legal questions which are subject to the broad jurisdiction of a general court of equity. *Carten* v. *Carten,* supra, 615. Thus, the Probate Court lacks essential powers necessary to handle independent equitable actions, clearly supporting the position that it may not assume jurisdiction in such cases. Again, we should not imbue a court with jurisdiction where its own limitations prevent it from going forward.

Finally, one last point reinforces our position and

demonstrates the impotency of the Probate Court in equity matters. "The Probate Court is without jurisdiction to order an administrator or executor to pay a claim disallowed by him, the creditor's only remedy being by suit or application for the appointment of commissioners." 1 Locke & Kohn, Conn. Probate Practice, p. 176; see *Davis* v. *Weed,* 44 Conn. 569, 576. Since the statutory provisions concerning the appointment of commissioners on solvent estates have been repealed (Public Acts 1967, No. 558, § 24), the claimants' only present recourse would be in a court of general jurisdiction, and this even after a Probate Court hearing and decree, a de novo Superior Court hearing on an appeal from probate and an appeal to this court. See *Carten* v. *Carten,* 153 Conn. 603, 615, 219 A.2d 711; *Phillips* v. *Moeller,* 147 Conn. 482, 489, 163 A.2d 95; *Dettenborn* v. *Hartford-National Bank & Trust Co.,* supra, 393. To allow such a course would be to favor possible delay and wasted action. The more direct route, a single hearing in a court of general jurisdiction, and a single appeal, both of which would be enforceable, is the appropriate and commendable route.

We recognize that the Probate Court is empowered to order the settlement of disputed claims against an estate or fund. General Statutes § 45-231. This, however, is a procedure which the trustee may follow with the court's permission. It is not a remedy for the party making a claim against the estate or fund. Should the trustee refuse to recognize the claim, then this procedure is of no avail to the claimant.

The Probate Court is thus totally incapable of providing an equitable claimant with any final, binding remedy. It, therefore, seems clear that, as the

defendant argues, the Probate Court has no jurisdiction over a matter of this sort. The claimant, however, if the trustee refuses to recognize his claim, is not without a remedy. His recourse is through courts of ordinary jurisdiction. This is particularly so where the action is of an equitable nature. In the present situation, the plaintiffs are not creditors. They have only an equitable claim. If a court of equity finds in their favor they then become creditors of the fund, but not before. Thus, the first act must be to have the claim recognized. If the trustee is willing to recognize it in his accounting, the claimant can come before the Probate Court. The Probate Court may then act on the claim, exercising the powers of equity, even if the claim is contested as to amount. If, however, as here, the trustee disallows the claim in its entirety, the Probate Court is without jurisdiction to entertain a petition concerning that claim, for such a petition would be an independent equitable action arising out of a matter not before the court, and thus would not be within the Probate Court's jurisdiction. The only appropriate remedy would then be in a court of general jurisdiction; a court of equity if the claim is an equitable one. See *Davis* v. *Weed,* supra, 576; 1 Locke & Kohn, op. cit. § 94. "Equity is the proper tribunal in which to enforce the equitable rights of a beneficiary of a trust." *McDonald* v. *Hartford Trust Co.,* 104 Conn. 169, 187, 132 A. 902; *Crandall* v. *Lincoln,* 52 Conn. 73, 108.

We, therefore, hold that the Probate Court may not entertain an equitable claim against a trust fund in an independent action. The only manner in which to test the validity of an equitable claim which has been disallowed by a trustee is through independent

action in an appropriate court of general jurisdiction.

Since the present action is an independent and equitable one, it was properly brought in a court of equity jurisdiction. Equity jurisdiction in our trial courts is divided between the Superior Court, the Court of Common Pleas and the Circuit Court. The distinction is solely in terms of the amount in controversy and not in the powers exercised. The Court of Common Pleas has, by statute, equity jurisdiction where the amount in controversy does not exceed $15,000. General Statutes § 52-6. In the present case two separate actions were brought, each for less than $7500. Clearly, the Court of Common Pleas was an appropriate court in which to bring the present action, and it properly assumed jurisdiction over the subject matter.

The defendants next claim that the plaintiffs made no assertion of their claim within the limitation of § 45-205 of the General Statutes. Since the defendants did not seek to raise this question by an appropriate pleading, they may not raise the claim at this late date.

Next, the defendants contend that, even if the court had jurisdiction to hear the matters, it had no jurisdiction over the trust res. In support of this proposition they cite *Hempstead* v. *Meadville Theological School,* 286 Pa. 493, 134 A. 103, and 54 Am. Jur. 122, Trusts, § 146, for the proposition that "[t]he right to reimbursement does not extend to expenses in obtaining restraining orders against a trustee, where the trust res is not before the court." 54 Am. Jur. 122, Trusts, § 146 n. We note first that the instant situation is not an attempt to obtain a restraining order, and we believe that the situation

here is somewhat distinguishable. In *Hempstead* v. *Meadville Theological School,* supra, the trustee was before the court for the sole purpose of determining whether or not he might act in a certain manner with relation to a trust. The trust itself, in that particular case, was not before the court for construction or the like. In the present case, on the contrary, the action is specifically against the trust, and the trustees are present solely in their representative capacity.

Viewing the situation from a different perspective, the trustees are before the court. Even if, arguendo, the court cannot control the trust res, it may assert its jurisdiction over the officials who have appeared before it. They may be ordered, as trustees, to pay the debt determined to be owing. Their funds, as trustees, and under the principle previously enunciated, are the trust funds. They thus must obey the judgment of the court. In support of the position that a court may order payment from the res in this type of action, we note that in *Trustees* v. *Greenough,* 105 U.S. 527, 532, 26 L. Ed. 1157, the plaintiff also brought a separate action for his expenses, and the United States Supreme Court allowed an award of damages from the trust fund. That court, in fact, considered that to be the "most equitable way of securing . . . contribution."

The defendants express fear that by allowing a recovery in this case there will no longer be any need to seek an allowance for counsel fees in any matter in the Probate Court. Even if that is so, the fear seems unfounded. It seems unlikely that parties will often be desirous of undergoing added litigation and additional expense to follow the present course. The situation would clearly be different if counsel fees

had been requested in a matter properly before the Probate Court and had been denied. An appeal would then be the appropriate remedy. We further point out that in order to recover in an equitable action the plaintiff has the burden of proving that his actions created an actual benefit to the fund or estate. Thus, a mere claim is insufficient. There must be a benefit, and a large enough benefit to have made the expenses incurred worthwhile. The benefit must appear, overall, looking backward from the fait accompli.

As their last point concerning the court's powers, the defendants appear to admit that counsel fees are allowable in some matters such as these, but claim that the rule is different where the proceedings are adversary in nature. That position is untenable. The fund "is liable for costs and expenses, including counsel fees incurred. This is the case even though the protection given or the raising of a fund results from what may be properly termed adversary litigation". *Hempstead,* supra, 495; see note, 49 A.L.R. 1149, 1159, ¶ II (b) (4). In fact, most of the cases which we have observed were adversary proceedings. Quite frequently in non-adversary proceedings such as will constructions, as suggested by the defendants, no fees are allowed, as there is no benefit to the fund, particularly if there is no ambiguity in the will to be construed. See 54 Am. Jur. (1970 Cum. Sup. 82), Trusts, § 636.13; *Simmons* v. *Hubbard,* 50 Conn. 574.

We now finally turn to the defendants' contention that the evidence does not support the court's conclusion that the plaintiffs conferred a benefit on the trust fund. The court was called upon to determine whether the expense which the plaintiffs sought to

recover was reasonably incurred in their securing a common benefit to the trust estate. We thus need determine only if there was evidence to support the court's conclusion.

We have already extensively reviewed the stipulation of the parties. We thus find it sufficient to recall that the defendants were prepared to accept any reasonable offer before the plaintiffs entered upon the scene, and that the $100,000 offer for the entire tract was considered, by the trustees, to be reasonable. We note that after the plaintiff Stephen Palmer entered the negotiations the offer was raised to $115,000 for a portion of the property; after further objection by Stephen Palmer, the offer was increased to $144,000 for the entire tract of land, and after the appeal was taken by all three plaintiffs and following additional conferences, the offer was again increased, to $165,000 for the entire tract. After that offer was withdrawn, further conferences were held, and the final offer of $165,000 for a portion of the tract was made. There is nothing appearing on this record other than the stubborn determination of the plaintiffs to see to it that a sale was effected at a price approximating the appraisal value of the property, which would account for the price ultimately achieved. We therefore find that the court could reasonably have concluded that "[t]he actions of the plaintiffs resulted in the accrual of substantial benefits to the estate."

The court found that the plaintiffs were jointly interested in the trust fund, that the trust was a common fund, that the plaintiffs' objections were made in good faith, that the beneficiaries under the trust have shared pro rata in the increment to the fund, that the nonparty beneficiaries have in no

manner contributed to the increase in the value of the fund, and that the plaintiffs incurred legal fees. The court also assessed the value of the plaintiffs' legal fees. Only one of the above findings has, in any manner, been challenged by the defendants. That sole challenge is to the plaintiffs' good faith, and even that challenge is merely by implication. The defendants construe the plaintiffs' appeal from the granting of the petition to sell the tract as "a nearly groundless suit". The phrase is clearly internally contradictory. "Nearly groundless" means that it had some merit. If it had some merit then it was not "groundless". The finding, therefore, that the plaintiffs benefited the trust fund, which we have already held to be supported by the evidence, when combined with those findings above noted as totally or effectively unchallenged, provide all of the elements of the equitable doctrine. The plaintiffs have, at their own expense, and in good faith, benefited a common fund of which they were beneficiaries. They are thus entitled to reimbursement from the fund, and the court was within its discretion in so ordering.

There is no error.

In this opinion ALCORN, C. J., RYAN and SHAPIRO, Js., concurred.

HOUSE, J. (dissenting). This case was submitted to the trial court on a stipulation of facts. On the facts as stipulated it appears that after the two-year delay in the sale of the property it was sold at a higher price than originally contemplated. I cannot agree, however, that the stipulation of facts supports the conclusion of the court that it was the action of the plaintiffs which resulted in this higher

price and the accrual of substantial benefits to the estate. That the sun rose after the cock crowed does not support a conclusion that the sun rose as a result of the crowing. In the absence of a stipulation or proof that the increased price for the property came about not only subsequent to but as a result of the plaintiffs' actions, I am of the opinion that the judgment should not be sustained.