STATE OF CONNECTICUT *v.* JAMES N. EGAN, ADMINISTRATOR (ESTATE OF LEONARD O. RITTER)

HOUSE, C. J., COTTER, LOISELLE, MACDONALD and BARBER, Js.

Argued May 8—decision released July 1, 1975

*William C. Galligan,* for the appellant (defendant).

*Bernard F. McGovern, Jr.,* assistant attorney general, with whom was *Charles A. Overend,* assistant attorney general, and with whom, on the brief, were *Carl R. Ajello,* attorney general, and *F. Michael Ahern,* assistant attorney general, for the appellee (plaintiff).

COTTER, J. The defendant appeals from a judgment of the Superior Court awarding the plaintiff damages of $15,122.46 against the estate of the defendant's decedent. The basic facts of the case are not in dispute.[1]

The decedent, Leonard O. Ritter, a veteran, was admitted to the Veterans' Home and Hospital,

---

[1] Certain evidentiary rulings assigned as error by the defendant but not briefed are considered abandoned.

Rocky Hill, on May 24, 1960, by the commandant. His admission was ratified by a vote of the veterans' home and hospital commission, the official state agency in charge of management of the home, at its regularly scheduled meeting in June, 1960. Except for 26 days of furlough, Ritter remained at the home as a patient in the hospital portion thereof until his death on June 26, 1968, receiving care and treatment, including surgical operations.

During his stay at the hospital, Ritter's sources of income consisted of a Veterans Administration pension and federal social security benefits payments, which he received continuously. No charges were made by the commission against Ritter during his stay; however, all of the funds which he received were deposited each month in a bank account in his name at a Middletown bank, except for a certain sum which Ritter retained for personal expenses. At the time of his death, this bank account contained $15,871.75.

In addition, when Ritter was admitted to the home he agreed in writing to obey the commission's rules and regulations. One of these rules provides that a veteran at the home turn over his pension check to the commission from which an allowance is remitted. For example, a veteran who goes on furlough receives a certain sum of money from his bank account for his expenses, and is also allowed to withdraw funds to purchase items for his personal use. Ritter, of course, could have left the home voluntarily at any time.

After Ritter's death, the commission filed a claim against his estate in the amount of $15,307.91, later

reduced to $15,122.46, for medical and surgical care and treatment, food and clothing previously furnished by the commission, which was computed upon the weekly per capita costs of providing services at the home during Ritter's residency there, less the amounts in federal aid and medicare paid to the commission on Ritter's behalf. The categories of services for which per capita costs were billed included administration, food services, general services, operation of farm, and care of patients. "Administration" encompasses administrative functions; "food services" involves employment of food service personnel and cost of food; "general services" encompasses expenses for plant maintenance, laundry services and security personnel; "care of patients" encompasses employment of the medical, nursing, and hospital housekeeping staffs; and "operation of farm" involves the expense of operating the farm which, until 1961, supplied food for residents and patients at the home. The weekly per capita costs are computed annually by the state comptroller from the commission's expenditures for the preceding year.

After the defendant denied the commission's claim, the plaintiff brought an action on the claim in the Superior Court, which found the issues in its favor.

The defendant's argument that Ritter's admission to the home by the commandant, and not the commission, barred the plaintiff's claim against the estate is without merit. The court's finding that the commission formally ratified the action of the commandant, which was based on properly admitted evidence, fully supports its conclusion that Ritter was duly admitted pursuant to the provisions of

General Statutes § 27-108 (a).[2]   See, e.g., *General Box Co.* v. *United States,* 351 U.S. 159, 162, 76 S. Ct. 728, 100 L. Ed. 1055, reh. denied, 351 U.S. 990, 76 S. Ct. 1044, 100 L. Ed. 1502; see also *McDermott* v. *McDermott,* 97 Conn. 31, 37, 115 A. 638.

The defendant has not challenged the veteran's liability to pay for medical and surgical care or treatment, food and clothing under General Statutes § 27-108 (c)[3] nor the commission's authority to bill the veteran for such charges during his lifetime; rather, error is assigned in the court's conclusion that under the statute these charges could properly be made in the commission's discretion against the estate of the veteran after his decease. Section 27-108 (c) empowers the commission to "determine the sum" to be paid by admitted veterans who, in its judgment, are able to pay in whole or in part for their support, and to "fix the amount to be paid" for medical and surgical care or treatment, food and clothing furnished them at the institution. That such amounts are chargeable against the estate of the veteran is clearly contemplated by § 27-108 (d), which states that "[p]ayment of amounts deter-

---

[2] "[General Statutes] Sec. 27-108. ADMISSION. DISCHARGE. TRANS-FER. PAYMENT. (a) All male veterans shall be entitled to admission to the home; and all veterans who, from disease, wounds or accident, need medical or surgical care and treatment or who have become mentally ill and who have no adequate means of support, shall be entitled to admission to any hospital and to receive necessary food, clothing, care and treatment therein, at the expense of the state. . . ."

[3] "[General Statutes] Sec. 27-108. ADMISSION. DISCHARGE. TRANS-FER. PAYMENT. . . . (c) The commission shall determine the sum to be paid by such applicants as it admits to the home or a hospital, who, in the judgment of the commission, are able to pay in whole or in part for their support, and fix the amount to be paid for medical and surgical care or treatment, food and clothing furnished such veterans at the home or at a hospital. . . ."

mined by the commission as provided by subsection (c) of this section *from the estates of deceased veterans* shall be deposited in the institutional general welfare fund of the veterans' home and hospital commission . . . ." (Emphasis added.) Allowing claims against the estate of a veteran for such expenses is not an uncommon practice. See, e.g., *Tama County* v. *Kepler,* 187 Iowa 34, 173 N.W. 912; 6 C.J.S., Army and Navy, § 60.

Furthermore, contrary to the defendant's claim, the statute does not specify when the commission is to make its determination of the amounts payable for services rendered to veterans, how such determination is to be made, or whether the commission must determine an amount based only on the veteran's ability to pay during his lifetime or during the time of his actual residence at the home. Indeed, as in this case, posthumous billing of the veteran can make it possible for him to accumulate his income and draw upon these funds for furloughs and other purposes, whereas periodic billing during his lifetime for actual costs incurred might result in a deprivation of all of his assets. The court properly concluded that § 27-108 (c) empowers the commission to determine in its discretion whether the veteran or his estate has the means to pay for services furnished thereunder, the amount to be paid, and the manner and time of payment, and that the deceased had the ability to pay the charges properly billed against his estate by the commission.

The defendant has also claimed that by including administration expenses, general services, and operations of the dairy farm in the per capita rate charged against Ritter, the commission charged costs not authorized by § 27-108 (c); error accord-

ingly is assigned in the court's conclusion to the contrary. The court concluded that these items pertained to the medical and surgical care and treatment and food and clothing furnished veterans at the home, as contemplated by § 27-108 (c). This conclusion was amply supported by its findings of fact which specified in detail the services encompassed by each of the five categories of per capita costs which comprised the plaintiff's claim. These findings were in turn supported by a substantial amount of documentary and testimonial evidence properly admitted by the court. The court might also reasonably have concluded on these facts that the questioned items pertained to the "support" of veterans at the home within the meaning of § 27-108 (c).

The defendant's final claim is that the plaintiff's action was barred by the Statute of Limitations. The defendant has not claimed, either in the trial court by way of special defense or on appeal, that the plaintiff in any way failed to proceed in compliance with the particular time limitations applicable to this case. See *Palmer* v. *Hartford National Bank & Trust Co.*, 160 Conn. 415, 433, 279 A.2d 726. There is no merit, then, to his claim. *Robbins* v. *Coffing*, 52 Conn. 118, 141, 142.

There is no error.

In this opinion the other judges concurred.