APPEAL FROM PROBATE OF PHYLLIS MARCUS ET AL.,
CONSERVATRICES (ESTATE OF IDA BETZES)
(12561)

PHYLLIS MARCUS ET AL., CONSERVATRICES
(ESTATE OF IDA BETZES) *v.* DEPARTMENT OF
INCOME MAINTENANCE
(12635)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued January 15—decision released April 29, 1986

*Kathleen M. Van Der Aue,* with whom, on the brief, were *Edward L. Marcus* and *James M. O'Connor,* for the appellants (conservatrices).

*Judith Merrill Earl,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (department of human resources).

*Kathleen M. Van Der Aue,* with whom, on the brief, were *Edward L. Marcus* and *James M. O'Connor,* for the appellants (plaintiffs).

*Robert A. Nagy,* assistant attorney general, with whom, on the brief, was *Judith Merrill Earl,* assistant attorney general, for the appellee (defendant).

DANNEHY, J. These two appeals arise from the same set of circumstances. The plaintiffs, Phyllis Marcus and Selma Anderson, are the conservatrices for their mother, Ida Betzes, an incapable person. In the first case they appealed to the Superior Court from a disallowance by the Probate Court for the district of New Haven of an item in their account in which they asked to be allowed a credit for unauthorized gifts of certain property which belonged to their ward and which they gave to themselves and various members of the ward's family. The matter was referred to the *Hon.*

*Raymond J. Devlin,* state trial referee, who, exercising the powers of the Superior Court, affirmed the order and decree of the Probate Court and dismissed the appeal. In the second case, the plaintiffs appeal from the judgment of the Superior Court, *Edelberg, J.,* sustaining the denial by the department of income maintenance of an application for medicaid benefits by the conservatrices on behalf of their ward. We find no error on either appeal.

The facts and procedural history of these cases follow. Phyllis Marcus and Selma Anderson were appointed co-conservatrices for their mother, Ida Betzes, by the Probate Court for the district of New Haven in November, 1976. When they were appointed her conservatrices, Betzes had assets of $596,351.09 and ample income for her comfortable support. Between December, 1976, and December, 1979, the conservatrices made a series of gifts of the ward's property in the amount of $384,060.66. They gave $291,066.66 to themselves, and made gifts in the amount of $12,000 to each of their five children and to Edward L. Marcus and Donald B. Alderman, their spouses. They also gave $9000 to David Shifrin, the son-in-law of Phyllis Marcus. The cumulative effect of these gifts, together with management expenses, was the total depletion of their ward's estate. Betzes, who is over ninety years old, resides at a home for the aged. She is incapacitated due to advanced age and financially unable to pay for her care and maintenance.

On February 6, 1980, Phyllis Marcus, as conservatrix, applied to the department of income maintenance for medicaid benefits on behalf of her ward. After learning of the gifts that had depleted the estate, the department of human resources, as an "interested party" under General Statutes § 45-75, petitioned the Probate Court for an accounting of the estate's man-

agement.[1] The Probate Court conducted a hearing, and on June 16, 1980, disallowed the gifts, holding that such gifts were unauthorized under Connecticut law. Thereafter, the department of income maintenance, relying on the decision of the Probate Court, denied the pending application for medicaid benefits on June 30, 1980. On July 7, 1980, the conservatrices filed an appeal from probate with the Superior Court challenging the disallowance of the gifts. On July 15, 1980, the conservatrices requested an administrative hearing with the department of income maintenance concerning the denial of their application for medicaid benefits. After a hearing the department, on September 30, 1980, upheld the earlier denial of benefits. The hearing officer held that Betzes was ineligible for public assistance under department income guidelines, reasoning that the disallowance by the Probate Court of the conservatrices' gifts rendered those funds available for the maintenance and support of the ward. The decisions of the department of income maintenance and of the Probate Court were eventually sustained on separate

---

[1] The department of human resources became involved in this matter through a referral it received from the department on aging. The conservatrices contend that the department of human resources was not an "interested party" under General Statutes § 45-75 (c), and therefore had no authority to request the accounting which precipitated this appeal. We disagree. Rule 3.1.02 of the Connecticut Probate Practice Book defines an interested party as "persons, agencies or institutions, who shall appear to the court of probate to be legitimately interested in the welfare of the respondent." The commissioner of the department on aging has been given broad statutory responsibilities to provide for the welfare of elderly citizens in this state. General Statutes § 46a-14 et seq. The department on aging, upon determining that "an elderly person is in need of protective services," must refer the case to the department of human resources. General Statutes § 46a-17. Thereafter, the "authority of the department of human resources . . . shall include, but not be limited to, the right to initiate or otherwise take those actions necessary to assure the health, safety and welfare of any elderly person . . . . " General Statutes § 46a-18. We believe that the general language and salutary purposes of these provisions qualify the department of human resources as an "interested party" within the meaning of General Statutes § 45-75 (c).

appeals to the Superior Court. The conservatrices have appealed to this court from the judgments of the Superior Court.

We first address the conservatrices' claim that the Probate Court erred in its determination that the gifts from the assets of their ward's estate were unauthorized under Connecticut law. The Probate Court held that it had no power to authorize the gifts, and on appeal, the Superior Court agreed. At the time these gifts were made, our statutes did not authorize a conservator to make gifts from property of the ward's estate. "A conservator has only such powers as are expressly or impliedly given to him by statute. See *Stempel* v. *Middletown Trust Co.,* 127 Conn. 206, 221, 222, 15 A.2d 305 [1940]. In exercising those powers, he is under the supervision and control of the Probate Court." *Elmendorf* v. *Poprocki,* 155 Conn. 115, 118, 230 A.2d 1 (1967). A " 'conservator of the estate,' " under our law, is a person "appointed by the court of probate under the provisions of [General Statutes c. 779] to supervise the financial affairs of a person found to be incapable of managing his or her own affairs . . . ." General Statutes § 45-70a (a). The statutory duties of a conservator are to "manage all the property [of the estate] and apply so much of the net income of the property, and, if necessary, any part of the principal of the property, which is required to support the ward and those members of the ward's family whom he has the legal duty to support and to pay his debts, and may sue for and collect all debts due him." General Statutes § 45-75 (a).

"The probate court is a court of limited jurisdiction and has only such powers as are given it by statute or are reasonably to be implied in order to carry out its statutory powers." *Prince* v. *Sheffield,* 158 Conn. 286, 293–94, 259 A.2d 621 (1969); *Palmer* v. *Reeves,* 120 Conn. 405, 408, 182 A. 138 (1935). "It is a familiar prin-

ciple that a court which exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." *Heiser* v. *Morgan Guaranty Trust Co.,* 150 Conn. 563, 565, 192 A.2d 44 (1963); *Union & New Haven Trust Co.* v. *Sherwood,* 110 Conn. 150, 161, 147 A. 562 (1929); see *Potter* v. *Alcorn,* 140 Conn. 96, 100, 99 A.2d 97 (1953). The Probate Court is under an "affirmative duty" to protect the assets of an incompetent's estate. *Marshall* v. *Kleinman,* 186 Conn. 67, 69, 438 A.2d 1199 (1982). The court, and *not the conservator,* is "primarily entrusted with the care and management of the ward's estate, and, in many respects, the conservator is but the agent of the court. *Shippee* v. [*Commercial*] *Trust Co.,* 115 Conn. 326, 330, 161 A. 775 [1932]; *Johnson's Appeal,* 71 Conn. 590, 597, 42 A. 662 [1899]." *Elmendorf* v. *Poprocki,* supra.

Under our law, it is clear that the conservator acts under the supervision and control of the Probate Court in the care and management of the ward's estate. It is equally clear that the Probate Court is without jurisdiction to approve of any acts by the conservator unless those acts are authorized by statute. "A Probate Court judge is not a chancellor. His only equity powers are those which are incidental to, and connected with, the settlement of a particular estate." *Palmer* v. *Hartford National Bank & Trust Co.,* 160 Conn. 415, 429, 279 A.2d 726 (1971). The facts of this case present no compelling circumstances for broadening these powers, since the record fails to establish what judgment the ward might have exercised in the face of her own total impoverishment. The power to make such gifts as were made in this case cannot reasonably be implied as necessary or incidental to a conservator's express duties under General Statutes § 45-75 (a). Therefore, the Probate Court correctly determined that it was without jurisdiction to allow them.

The conservatrices contend, however, that the Probate Court was empowered to allow their gifts under the so-called "doctrine of substituted judgment." According to this judicial doctrine, the Probate Court may authorize gifts from the estate of an incompetent, not for the purpose of aiding needy relatives, but solely for the purpose of avoiding unnecessary inheritance taxes or expenses of administration where it appears that the ward, if a sane and reasonably prudent person, would so plan his estate, and where the proposed dispositions are made in accordance with the ward's testamentary intent. See note, "Power of Court or Guardian to Make Noncharitable Gifts or Allowances Out of Funds of Incompetent Ward," 24 A.L.R.3d 863, 901, § 16 (1969, 1985 Sup.). In the present case the Probate Court expressly found that the ward "would have made these gifts if competent and that the doctrine of 'Substituted Judgment' would apply in other states where the powers of the Conservator are greater." It is undisputed that the children and grandchildren of Betzes were the natural objects of the ward's bounty.

The Probate Court correctly held that the doctrine of substituted judgment had not been adopted in this state at the time these gifts were made. As stated above, this court traditionally has strictly construed the statutory powers of a conservator and the Probate Court in the management and administration of an incompetent's estate. In 1983, the legislature codified the doctrine of substituted judgment when it enacted No. 83-62 of the 1983 Public Acts, which sets forth limited conditions under which a conservator may make gifts from the property of the ward's estate. General Statutes § 45-75 (e).[2] That statute expressly leaves

[2] "[General Statutes] Sec. 45-75 . . . (e) Upon application of a conservator of the estate, after hearing with notice to the commissioner of administrative services and to all parties who may have an interest as determined by the court, the court may authorize the conservator to pay and distrib-

uncodified the law governing gifts made before October 1, 1983. In any event, we note that even if the statute were to be applied by analogy, its provisions would not validate the gifts that are presently contested. We therefore conclude that the Probate Court and the Superior Court on appeal did not err in refusing to apply the doctrine of substituted judgment to validate the gifts in this case.

We next address the conservatrices' claim that the department of income maintenance improperly denied their application for medicaid benefits on behalf of the ward. The principal issue in this regard is whether the ruling of the Probate Court disallowing the gifts made by the conservatrices rendered those funds available for purposes of determining the ward's eligibility for medicaid assistance.

ute gifts of income and principal from the estate of the ward in such amounts or in such form as the court approves, to individuals and qualified charities as defined in the Internal Revenue Code of 1954, as amended. Such gifts shall be authorized only if the court finds that: (1) In the case of individuals not related to the ward by blood or marriage, the ward has made a previous gift to that individual prior to being declared incapable; (2) in the case of a charity, the ward had made a previous gift to such charity or pledged a gift in writing to such charity prior to being declared incapable; (3) the estate of the ward is more than sufficient to carry out the duties of the conservator as set forth in subsections (a) and (b) of this section, both for the present and foreseeable future, including due provision for the continuing proper care, comfort and maintenance of such ward in accordance with such ward's established standard of living and for the support of persons the ward is legally obligated to support; (4) the purpose of the gifts is not to diminish the estate of the ward so as to qualify the ward for federal or state aid or benefits; and (5) the ward has no objection to such gift. In determining the intent of the ward concerning continuation of the gifts, the court shall ascertain the present intent of the ward if he or she is able to understand the nature of the gift program. The court shall give consideration to the following: (A) The medical condition of the ward, including the prospect of restoration to capacity; (B) the size of the ward's estate; (C) the provisions which, in the judgment of the court, such ward would have made if he or she had been capable, for minimization of income and estate taxes consistent with proper estate planning. The provisions of this section shall not be construed to validate or invalidate any gifts made by a conservator of the estate prior to October 1, 1983."

Congress established the medicaid program in 1965 under title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. Under the program, states receive federal medical assistance funds which they agree to administer in accordance with federal statutes and regulations promulgated by the secretary of health and human services, 42 U.S.C. § 1396a (b). The state must develop a plan of administration, and the plan must be approved by the secretary. Connecticut's election to participate in the medicaid program is found in General Statutes § 17-134a et seq. See *State* v. *Murtha,* 179 Conn. 463, 469, 427 A.2d 807 (1980).

Under applicable federal guidelines, the department of income maintenance must determine eligibility for medicaid assistance by "taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient . . . ." 42 U.S.C. § 1396a (a) (17) (B). Except in limited circumstances not pertinent here,[3] the state may consider "only assets *actually available*" to the applicant in determining eligibility for medicaid benefits. (Emphasis in original.) *Zeoli* v. *Commissioner of Social Services,* 179 Conn. 83, 94, 425 A.2d 553 (1979); *Rowland* v. *Maher,* 176 Conn. 57, 61, 404 A.2d 894 (1978); *Morgan* v. *White,* 168 Conn. 336, 343–45, 362 A.2d 505 (1975). Thus, the department of income maintenance, in considering the conservatrices' application for medicaid benefits on behalf of their ward, was required to determine whether the ruling of the Probate Court rendered the invalidated

---

[3] The secretary of health and human services, whose regulations are entitled to "legislative effect"; *Schweiker* v. *Gray Panthers,* 453 U.S. 34, 44, 101 S. Ct. 2633, 69 L. Ed. 2d 460 (1981); *Batterton* v. *Francis,* 432 U.S. 416, 426, 97 S. Ct. 2399, 53 L. Ed. 2d 448 (1977); may define what income and resources are "available" under 42 U.S.C. § 1396a (a) (17) (B). *Herweg* v. *Ray,* 455 U.S. 265, 275–76, 102 S. Ct. 1059, 71 L. Ed. 2d 137 (1982) ("deeming" of income between spouses under 42 C.F.R. § 435.723); *Schweiker* v. *Gray Panthers,* supra (same).

gifts "actually available" for the purposes of 42 U.S.C. § 1396a (a) (17) (B). The legal effect of the Probate Court's disallowance of the accounting was to impose personal liability on the conservatrices for the return of the unauthorized gifts to the estate. A conservator is a fiduciary and acts "at his peril and on his own personal responsibility" unless and until his actions in the management of the ward's estate are approved by the Probate Court. *Elmendorf* v. *Poprocki,* 155 Conn. 115, 119, 230 A.2d 1 (1967); *Marshall* v. *Kleinman,* 186 Conn. 67, 69–70, 438 A.2d 1199 (1982). In the present case the Probate Court expressly disapproved the actions of the conservatrices, and therefore the estate has a legally enforceable right against them for restitution of the unauthorized dispositions.[4]

The conservatrices contend that the department of income maintenance in considering their application for medicaid assistance should have allowed relitigation of certain issues already decided by the Probate Court. They first argue that the Probate Court judgment was not final, and therefore ineffective, because the conservatrices had filed an appeal with the Superior Court. We disagree. The filing of an appeal from a judgment of the Probate Court does not act as a supersedeas. The

---

[4] The mere fact that the conservatrices are personally liable for the unauthorized dispositions does not necessarily mean that these funds are "available" for purposes of determining eligibility for medicaid assistance under 42 U.S.C. § 1396a (a) (17) (B). The state would not be justified in denying benefits in the event that the conservatrices are unable to satisfy a judgment against them, or if for any other reason the funds due the estate are not actually available for the maintenance and support of the ward. *State* v. *Murtha,* 179 Conn. 463, 470, 427 A.2d 807 (1980); *Buckner* v. *Maher,* 424 F. Sup. 366, 373 (D. Conn. 1976), aff'd, 434 U.S. 898, 98 S. Ct. 290, 54 L. Ed. 2d 184 (1977) (irrational to presume availability of assets not actually available); see *Zeoli* v. *Commissioner of Social Services,* 179 Conn. 83, 94, 425 A.2d 553 (1979) (assets held in a spendthrift trust not "actually available" to the beneficiary for purposes of title XIX eligibility). The conservatrices have never alleged that they are financially unable to restore the estate, and therefore we need not consider the issue further on this appeal.

Probate Court judgment remains in full force and effect until it is vacated or modified by the Superior Court. *Stevens' Appeal,* 157 Conn. 576, 581, 255 A.2d 632 (1969); *Hirsch* v. *Braceland,* 144 Conn. 464, 469, 133 A.2d 898 (1957); *Avery's Appeal,* 117 Conn. 201, 205, 167 A. 544 (1933); see Locke & Kohn, Connecticut Probate Practice (1951) § 186, p. 382. The department of income maintenance was not required to disregard the judgment of the Probate Court merely because that judgment was on appeal.

The conservatrices also argue that the department of income maintenance improperly relied on the judgment of the Probate Court in determining the ward's eligibility for medicaid because such reliance, they contend, was contrary to controlling federal law, and hence, invalid under the supremacy clause. The basis of their argument is that prior to the enactment of the Boren-Long amendment to the Social Security Act; Pub. L. No. 96-611, § 5, 94 Stat. 3567–68 (December 28, 1980), effective March 1, 1980, codified at 42 U.S.C. §§ 1382b (c), 1396a (j); the act expressly allowed an otherwise qualified applicant whose assets exceeded financial eligibility limits to dispose of the excess assets in order to become eligible for supplemental security income benefits (SSI). 42 U.S.C. § 1382b (b). Furthermore, a state medicaid agency may not add eligibility criteria not expressly authorized by federal law. *Philbrook* v. *Glodgett,* 421 U.S. 707, 95 S. Ct. 1893, 44 L. Ed. 2d 525 (1975); *Van Lare* v. *Hurley,* 421 U.S. 338, 95 S. Ct. 1741, 44 L. Ed. 2d 208 (1975); *Lewis* v. *Martin,* 397 U.S. 552, 90 S. Ct. 1282, 25 L. Ed. 2d 561 (1970). Regulations issued by the secretary of health and human services prohibit a state medicaid agency from imposing eligibility requirements on medicaid applicants that are more restrictive than those imposed on SSI applicants. 42 C.F.R. § 435.401 (c). Federal courts construing these provisions have uniformly held

that state laws purporting to restrict the transfer of assets for the purpose of becoming eligible for medicaid benefits are void under the supremacy clause. *Caldwell* v. *Blum,* 621 F.2d 491 (2d Cir. 1980), cert. denied, 452 U.S. 909, 101 S. Ct. 3039, 69 L. Ed. 2d 412 (1981); *Fabula* v. *Buck,* 598 F.2d 869 (4th Cir. 1979); *Robinson* v. *Pratt,* 497 F. Sup. 116 (D. Mass. 1980). The Boren-Long amendment, which authorizes transfer-of-assets restrictions under limited circumstances; General Statutes § 17-134b;[5] has not been applied retroactively to validate the improper denial

---

[5] "[General Statutes] Sec. 17-134b. ELIGIBILITY. (a) Medical assistance shall be provided for any otherwise eligible person whose income, including any available support from legally liable relatives and the income of his spouse or dependent child, is not more than the minimum income permissible under federal law for such eligibility and if such person has not made, within twenty-four months prior to the date of application for such assistance, an assignment or transfer or other disposition of property for less than fair market value for the purpose of establishing eligibility for benefits or assistance under this section. Any such disposition shall be presumed to have been made for the purpose of establishing eligibility for benefits or assistance unless such person furnishes convincing evidence to establish that the transaction was exclusively for some other purpose. Ineligibility because of such disposition shall continue only for either (1) twenty-four months after the date of disposition or (2) that period of time from the date of disposition over which the fair market value of such property, less any consideration received in exchange for its disposition, together with all other income and resources, would furnish support on a reasonable standard of health and decency, whichever period is shorter, except that in any case where the uncompensated value of disposed resources exceeds twelve thousand dollars, the commissioner of income maintenance shall provide for a period of ineligibility based on the uncompensated value which exceeds twenty-four months. The commissioner shall increase the standards for eligibility for medical assistance to the minimum levels permissible under federal law. Such levels shall be based on the regional differences in the standard for public assistance, if applicable, unless such levels based on regional differences are not in conformance with federal law. Any income in excess of the applicable amounts shall be applied as may be required by said federal law, and assistance shall be granted for the balance of the cost of authorized medical assistance.

"(b) For the purpose of this part, the commissioner of income maintenance shall consider parental income and resources as available to a child under twenty-one years of age who is living with his parents."

of medicaid benefits occurring before its effective date. See *Dawson* v. *Myers,* 622 F.2d 1304 (9th Cir. 1980), vacated and remanded for reconsideration in light of the Boren-Long amendment sub. nom. *Beltran* v. *Myers,* 451 U.S. 625, 101 S. Ct. 1961, 68 L. Ed. 2d 495 (1981), on appeal after remand, 701 F.2d 91 (9th Cir. 1982), cert. denied sub nom. *Rank* v. *Beltran,* 462 U.S. 1134, 103 S. Ct. 3115, 77 L. Ed. 2d 1369 (1983). Our own transfer-of-assets laws, rendering ineligible a medicaid applicant who had transferred assets within seven years of his application without receiving reasonable consideration, were declared invalid in *Buckner* v. *Maher,* 424 F. Sup. 366 (D. Conn. 1976), aff'd, 434 U.S. 898, 98 S. Ct. 290, 54 L. Ed. 2d 184 (1977).

The conservatrices maintain that the ward could not have been denied medicaid benefits had she been competent and had she, rather than her conservators, made the gifts in these cases. They contend that the application of our probate laws to invalidate the gifts, *merely because made by the conservatrices,* and thereby to render the ward ineligible for medicaid benefits, effectively imposes an additional eligibility requirement not expressly authorized by federal law. In essence, the conservatrices seek to equate our pre-1983 probate restrictions on gifts by a conservator with transfer-of-assets restrictions generally.

Although the conservatrices' argument carries a superficial appeal, we find it unpersuasive. Transfer-of-assets restrictions were declared invalid because their essential purpose was to inhibit eligibility for medicaid benefits in direct contravention of then existing federal law. On the other hand, our probate laws are enforced to ensure that the ward, during incompetency, continues to live in the manner to which he or she is accustomed and to preserve the estate for the enjoyment of the ward upon his or her possible return to competency. Although the ward, if competent, might have

disposed of her property in the manner effected by these conservatrices and yet been qualified for medicaid benefits, we do not believe that federal law requires a presumption that she *would have done so. Matter of Scrivani,* 116 Misc. 2d 204, 210, 455 N.Y.S.2d 505 (1982). It is not improbable that many wealthy individuals prefer to maintain private arrangements for health and hospitalization insurance rather than draw down their assets to acceptable medicaid eligibility limits. We are unable to discover any regulations by the Secretary addressing the question of whether the enforcement by a state of its probate laws, under circumstances present here, is preempted by the Social Security Act. In the absence of a clear statement on this subject, we believe that our laws governing the administration of an incompetent's estate may constitutionally co-exist with federal regulation of medicaid eligibility. We therefore conclude that the department of income maintenance properly relied on the judgment of the Probate Court in determining that Betzes was ineligible for medicaid benefits.

There is no error in either case.

In this opinion the other judges concurred.