[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 26, 1996
The instant case is an action in the nature of an interpleader brought by the plaintiff pursuant to Gen. Stat. § 52-484. The purpose of the suit is to determine the interest, if any, of each of the defendants in the proceeds of a fire insurance policy issued by the plaintiff covering premises located at 34 Sutton Drive West, Stamford, at which a fire loss occurred in February 6, 1996. A trial of the case took place on September 4, 1996 prior to which Donna Schanz and Craig Schanz had filed their respective statements of claim.[1] Emanuel Margolis Trustee and Wofsey, Rosen, Kweskin Kuriansky Trustee filed a disclaimer of any interest in the proceeds of the policy. At an earlier stage of the proceedings, First County Bank had been defaulted for failure to appear. Following the receipt of the statements of claim and the disclaimer of interest, an interlocutory judgment of interpleader was entered.
The statement of claim filed by Donna Schanz discloses the interest of First County Bank as well as herself. First County Bank holds a mortgage on 24 Sutton Drive West. She asks that the plaintiff pay the mortgage and remit the remainder of the proceeds to her as the owner of the property. Craig Schanz's statement of claim is that a trust was established for the proceeds by virtue of a settlement agreement signed by the attorneys and a second agreement signed by Donna Schanz.
 I
From the evidence produced, the court finds that the facts set forth below were established regarding the competing positions of Donna and Craig Schanz who are mother and son.
The insurance policy issued by the plaintiff no. FJ-KAG1121 in the amount of $184,000.00 was in force when Donna Schanz's home was destroyed by fire on February 6, 1966. Craig Schanz instituted conservatorship proceedings for his mother in the Stamford Probate Court. On February 23, 1996, by an ex parte decree, the Probate Court appointed him as the temporary conservator of her person and her CT Page 5625
Donna Schanz challenged the appointment of the temporary conservator. At the suggestion of the Probate Court, she was examined by Dr. Laurence Lorefice a psychiatrist from Old Greenwich. Introduced in this court by Craig Schanz is Dr. Lorefice's recommendation that Donna Schanz attend Connecticut Counseling in Norwalk thrice weekly for a period of one year.[2] It was reported to this court that Dr. Lorefice recommended that Craig Schanz not serve as fiduciary because or Donna Schanz's feelings toward him.
On March 21, 1996, while the temporary conservatorship was in effect, an agreement entitled "Settlement Agreement In Re The Application of Craig Schanz, Conservator" was signed by Stephan Grozinger attorney for Craig Schanz, and Emanuel Margolis, attorney for Donna Schanz. In this document, the signatories agreed that:
 1. Craig Schanz shall resign his position and take all steps to restore Donna Schanz's property to her;
 2. Donna Schanz shall cooperate with and abide by Dr. Lorefice's recommendations concerning evaluations and prescribed treatment or therapy:
 3. Until the satisfactory completion of the prescribed course of treatment, the proceeds from the insurance policy shall be held in trust by Wofsey, Rosen, Kweskin Kuriansky, attorneys for Donna Schanz:
 4. Such funds shall be used exclusively for the payment of a reasonable living allowance and demolition and/or reconstruction of [Donna Schanz's] residence and such reasonable attorneys fees as may be required to be approved by the court. The trustee shall make annual accountings to the court:
 5. Other than stated in paragraphs 1-4, inclusive, the parties hereto release each other from any and all claims arising out of the conservatorship proceedings referred to herein. CT Page 5626
The agreement recited that it was subject to Probate Court approval and it was delivered to that court on March 22, 1996. The letter accompanying the delivery signed by Attorney Grozinger states "In accordance with the terms of the Agreement, we withdraw the applications of both temporary and Permanent Conservatorship pending with the Court." The temporary conservatorship was terminated on March 23, 1996.
Wofsey, Rosen, Kweskin Kuriansky, Attorney Margolis' firm, established a trustee account for Donna Schanz which account included funds received from her account at Chase Manhattan Bank and $13,000.00 received from the plaintiff as an "advance on contents settlement from ins. co." The ledger pages from the trustee account show that Wofsey, Rosen, Kweskin Kuriansky received an excess of $5,000.00 as fees.
The second agreement was signed by Donna Schanz on May 21, 1996 in a conference room at the Stamford Probate Court. Attorney Margolis, Attorney Grozinger and another lawyer from Grozinger's firm, Ivey, Barnum O'Mara, Attorney Miles McDonald, were present. The second agreement is untitled and in Attorney Grozinger's handwriting. Before this court, Grozinger stated that he wrote the second agreement in the conference room and it was dictated in part by Attorney Margolis and in part by Attorney McDonald. Because the second agreement is deemed crucial by Craig Schanz to his contention that a trust exists, it is set forth verbatim as follows.
 Whereas the parties entered into a Settlement Agreement dated March 21, 1996 a copy of which is annexed hereto and filed with the Stamford Probate Court, Whereas the parties wish to resolve all outstanding issues, it is hereby agreed that:
 Upon payment of the sum of ten thousand fifty-four dollars ($10,054) as set forth in the Final Account of the Temporary Conservator, the Trustee appointed pursuant to the Agreement shall be relieved of all obligations, and the Agreement shall be null and void.
 The parties hereto (re: Craig Schanz, Donna Schanz Emanuel Margolis Trustee) shall effective on the payment of the sum referred to above shall be released of any and all liabilities inter se. And all CT Page 5627 proceedings in the Probate Court, District of Stamford shall then be terminated.
Neither Craig Schanz nor Emanuel Margolis, Trustee the other two parties mentioned in the second agreement ever executed it. The sum of $10,054.00[3] represents the attorneys fee of Ivey, Barnum O'Mara in the amount of $8,092.50 plus expenses and disbursements contained in the accounting filed by the Temporary Conservator with the Stamford Probate Court.
When the second agreement was handed to Donna Schanz by Attorney Grozinger she was told by him and Attorney Margolis that if she signed it, there would be no trust, no conservatorship and the proceeds of the fire insurance policy minus $10,054.00 would be hers. The court credits Donna Schanz's testimony that she was coerced or pressured into signing the second agreement by the attorneys. Before signing, she had terminated her relationship with Attorney Margolis who she had hired to oppose the conservatorship not to enter into a trust.
In between the two agreements, Donna Schanz attended a few sessions at Connecticut Counseling as a way to obtain the proceeds of the policy. On May 8, 1996, Donna Schanz entered into a contract with Shoreline Modular Homes, Incorporated for a modular home to replace the house that was destroyed by fire on February 6, 1996.
 II
The attorneys were asked to submit briefs covering two issues, namely: whether a temporary conservator has the authority to enter into an agreement affecting his ward's property that will outlast the thirty day limitation of his appointment; and whether the elements necessary to create a trust were proved in this case. Briefs have been received from Attorney Stephen Grozinger representing Craig Schanz and Attorney John Wynne Jr. on behalf of Donna Schanz. As expected, Attorney Grozinger believes that any conservator, temporary or permanent, has unlimited powers over the property of his ward with the only limitation being the need for probate court approval on the sale or mortgage of the ward's real estate. He also is of the opinion that the elements necessary to create a trust have all been shown. Attorney Wynne's view is that by statute a temporary conservator has charge of the ward's property for only thirty days, that the statute is subject to strict construction and, CT Page 5628 further, Donna Schanz never intended to create a trust so that at least one of the necessary elements is absent.
Gen. Stat. § 45-654 authorizing the appointment of a temporary conservator provides, inter alia, that "The temporary conservator shall have charge of the property or of the person of the [ward] for such period of time or for such specific occasion as the court finds to be necessary, provided a temporary appointment shall not be valid for more than thirty days, unless at any time while the appointment of a temporary conservator is in effect, an application is filed for appointment of a conservator of the person or estate under section 45a-650." If such an application is filed, the statute provides that "the court may extend the appointment of the temporary conservator until the disposition of such application or for an additional thirty days, whichever occurs first."
No Connecticut cases have been found by the parties or by the court as to whether a temporary conservator can bind his ward's estate beyond the short time period of his authority. One text, however, has commented on the difference between the powers and duties of a temporary conservator and those of a conservator.
 A temporary conservator would appear to have the same powers and duties as an ordinary conservator, the only limitation on his or her powers being those inherent in the temporary nature of his or her appointment. It would seem inappropriate for a temporary conservator to enter into long-term arrangements for the ward. His or her primary duty is to provide for the ward's immediate care and support and to take care of the ward's pressing business affairs and generally to deal with the circumstances resulting in appointment, namely those threatening "irreparable injury to the mental or physical health or personal or legal affairs" of the ward.
R. Folsom G. Wilhelm, Connecticut Estates Practice, Incapacity and Adoption, (2d ed. 1991) § 2:8 (quotation marks in the original).
In Strong v. Birchard, 5 Conn. 357, 361-62 (1824), brought to the court's attention by Attorney Wynne, our Supreme Court said "the authority of an overseer is so liable to abuse and so CT Page 5629 derogatory to the liberty of the subject that it ought never to be extended beyond what is warranted, by a strict construction of the statute." Years later in Marcus' Appeal from Probate,199 Conn. 524 (1986), similar language is used in describing the duties of a conservator, a fiduciary, somewhat similar to the ancient overseer, and the duties of the Probate Court. "Under our law, it is clear that the conservator acts under the supervision and control of the Probate Court in the care and management of the ward's estate. It is equally clear that the Probate Court is without jurisdiction to approve of any acts by the conservator unless those acts are authorized by statute." 199 Conn. at 529.
A conservator has only such powers that are expressly or impliedly given to him by statute. Elmendorf v. Poprocki,155 Conn. 115, 118 (1967); Aetna Life Ins. Co. v. Clark, 30 Conn. Sup. 327,328 (1973). In this court's view there is nothing in the language of § 45a-654 that authorizes a temporary conservator to subject his ward's estate to a trust arrangement that by its very nature will outlast the thirty day period of his appointment. And there is nothing in the same statute that permits the Probate Court to approve such action. See Marcus'Appeal from Probate, supra at 529.
Moreover, the trust supposedly entered into on behalf of Donna Schanz by Attorney Margolis when he executed the Settlement agreement occurred when the temporary conservatorship was in effect. No citation is needed for the truism that an attorney acts upon instructions from his client. Donna Schanz testified that she did not give Attorney Margolis authority to enter into a trust. The court concludes that she could not so authorize him. Upon the appointment of the temporary conservator, Donna Schanz became conclusively incapable of making valid contracts with respect to her property as long as the conservatorship continued.Doris v. McFarland, 113 Conn. 594, 605 (1931); Stempel v.Middletown Trust Co., 7 Conn. Sup. 205, 217 (1939) rev'd other grounds 127 Conn. 206, 221-22 (1940).
Three basic elements are required to form a trust: (1) a trust res; (2) a fiduciary relationship between a trustee and a beneficiary requiring the trustee to deal with the res for the benefit of the beneficiary; and (3) the manifestation of an intent to create a trust. Goytizolo v. Moore, 27 Conn. App. 22, 25
(1992). Whether a trust has been created depends upon the intentions of the settlor and the trustee. Hansen v. Norton,172 Conn. 292, 296 (1977); Colonial Bank v. Matloff, 18 Conn. App. 20, CT Page 5630 28 (1989); accord Marzahl v. Colonial Bank Trust Co., 170 Conn. 62,64 (1976). Who can be the settlor when the settlement agreement was signed by Attorney Grozinger and Attorney Margolis on March 21, 1996? It could not have been Craig Schanz as the court holds that he was not legally authorized to enter into such an agreement. And it could not have been Donna Schanz who, during the period of the temporary conservatorship was legally incapable of dealing with her own property. Without a settlor there can be no trust. See Hansen v. Norton, supra at 296; Hebrew UniversityAssn. v. Nye, 148 Conn. 223, 229 (1961).
Concerned that Donna Schanz did not sign or, perhaps, could not sign the settlement agreement, Craig Schanz urges the second agreement as her ratification of the trust. Ratification is defined as an affirmance by a person of a prior act that did not bind him but was done or professed to be done on his account. A ratification requires acceptance of the results of the act with an intent to ratify and with full knowledge of all the material circumstances. Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172,185 (1986).
From the facts that have been found, the court concludes that the scenario surrounding Donna Schanz's execution of the second agreement — an unrepresented woman beset by three attorneys — was the antithesis of ratification. At most, Donna Schanz's signing of the second agreement was an attempt to rid herself of the legal entanglement created for her by others. The use of the word "trust" and "trustee" in the settlement agreement or the second agreement do not merit a contrary conclusion. SeeFuessenich v. DiNardo, 195 Conn. 144, 159 (1985); HebrewUniversity Assn. v. Nye, supra at 229.
 III
The court's conclusion is that no trust was created. The plaintiff is ordered to pay First County Bank the amount needed for a release of its mortgage and to pay the remainder to Donna Schanz.
BARNETT, J.