[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT SHAWMUT BANK'S MOTION TO STRIKEDATED FEBRUARY 15, 1996
Plaintiff George Darlow ("Darlow") filed a nine-count second revised complaint on January 10, 1996, asserting various claims against the defendant Shawmut Bank ("Shawmut"). The nine counts are as follows: (1) negligence; (2) breach of fiduciary duty; (3) conversion of funds; (4) CUTPA; (5) denial of due process under42 U.S.C. § 1983, 1985, 1986 and 1988; (6) negligent infliction of emotional distress; (7) intentional infliction of emotional distress; (8) defamation; and (9) interference with business relations.
On February 15, 1996, the defendant filed a motion to strike the entire second revised complaint, or in the alternative, to strike counts three, four, five and nine, together with a supporting memorandum of law. On March 22, 1996, the plaintiff filed a memorandum in opposition to the motion to strike. On June 14, 1996, the defendant filed a reply to the plaintiff's memorandum in opposition. On June 28, 1996, the plaintiff filed a second memorandum in opposition. On August 2, 1996, the plaintiff refiled this second memorandum in opposition. Oral argument on the pending motion to strike was heard on August 5, 1996.
For the reasons stated below, the motion to strike is granted as to counts three and five, and denied as to counts four and nine.[1]
Prior to discussing each count which Shawmut seeks to strike, the Court will state the legal standards to be applied when CT Page 8857 ruling on a motion to strike.
Discussion — Legal Standards, Motions to Strike
A motion to strike is the proper method by which to challenge the legal sufficiency of a complaint or any count therein. Gulackv. Gulack, 30 Conn. App. 305, 309, 620 A.2d 181 (1993). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged. (Citations omitted.) Novametrix Medical Systems v. BOC Group,Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992). In ruling on a motion to strike, the court must view the facts alleged in the light most favorable to the nonmoving party while also recognizing that "it is of no moment that the [moving party] may not be able to prove his allegations at trial." (Citation omitted.) Levine v. Bess Paul Sigel Hebrew Academy of GreaterHartford, 39 Conn. Sup. 129, 132, 471 A.2d 679 (Super.Ct. 1983).
Darlow's nine-count second revised complaint raises questions as to Shawmut's conduct while the defendant served as Darlow's conservator from 1980 until 1994. In summary, the plaintiff in count one alleges that the defendant misled the plaintiff as to whether he was represented by counsel and the necessity for obtaining counsel; that the defendant failed to monitor the plaintiff's mental capacity; that the defendant acted in its own interests by obtaining counsel for itself at the plaintiff's expense, "by inducing the plaintiff while legally incompetent to make a will naming the defendant as executor," and by charging excessive fees; that the defendant should have known that the plaintiff regained the ability to manage his own affairs and should have sought to terminate the conservatorship; that the defendant frustrated the plaintiff's access to $1 million placed in a custodial account under the plaintiff's care and control pursuant to a Probate Court order of December 1, 1992; and that the defendant delayed the restoration of the plaintiff's estate in the care of plaintiff by opposing the plaintiff s motion to restore. These factual allegations are incorporated by reference into each count of the second revised complaint.
Count Three: Conversion of Funds
In count three, Darlow alleges conversion based on "the defendant's willful failure to surrender possession of the plaintiff's estate upon the return of his capacity to manage his own affairs . . ." (Second Revised Complaint, count three, CT Page 8858 ¶ 24.) Darlow further alleges that "[a]fter the probate court's order that the Plaintiff's estate be restored to him, the Defendant contrived to delay distribution of Plaintiff's assets to him for an additional period of six months, despite Plaintiff's diligent efforts to regain control of his property." (Second Revised Complaint, count three, ¶ 23.) Shawmut moves to strike on the ground that the defendant as co-conservator was in lawful possession of the plaintiff's property.
"[C]onversion [is] defined as an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's right . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." (Citations omitted; internal quotation marks omitted.) Aetna Lifeand Casualty Co. v. Union Trust Co., 230 Conn. 779, 790-91,646 A.2d 799 (1994).
In the present case, the plaintiff's claim in paragraph 24 of count three that the defendant's conduct was "unauthorized" during the period of conservatorship is unsupported by any specific factual allegations. A motion to strike accepts all facts well-pleaded, but does not admit mere legal conclusions or the truth or accuracy of opinions stated in the complaint. SeeNovametrix Medical Systems v. BOC Group, Inc., supra, 224 Conn. 215. More significantly, the plaintiff's allegation in paragraph 23 of count three that the defendant "contrived to delay distribution" during the six months following the termination of the conservatorship[2] is conclusory and too lacking in factual detail to support the deprivation or exclusion element of a conversion claim. Accordingly, the defendant's motion to strike count three of the second revised complaint is granted.
Count Four: CUTPA
The plaintiff alleges that the defendant violated CUTPA in that its practices were "immoral, oppressive and unscrupulous and caused substantial injury to the plaintiff." (Second Revised Complaint, count four, ¶ 25.) The defendant moves to strike this count, contending that the plaintiff does not allege that the defendant engaged in "acts or practices in the conduct of any CT Page 8859 trade or commerce" as required under CUTPA.
The defendant, a bank, is not exempt from CUTPA. See NormandJosef Enterprises, Inc. v. Connecticut National Bank, 230 Conn. 486,521, 646 A.2d 1289 (1994) (holding that the banking industry is covered by CUTPA).
In the Court's view, Darlow sufficiently satisfied the "trade or commerce" prong of a CUTPA claim by alleging that the defendant "engages in the trade or commerce of administering the estates of conserved people"; (Second Revised Complaint, count four, ¶ 24); and that the defendant received fees for it services as conservator. (Second Revised Complaint, count one, ¶ 11(c).) Shawmut's counter-argument, that the plaintiff has not named the defendant's other wards in order to support the above allegation and prove a "practice," is not determinative. "In judging a motion to strike . . . it is of no moment that the [party] may not be able to prove his allegations at trial." (Citation omitted.) Levine v. Bess Paul Sigel Hebrew Academyof Greater Hartford, Inc., supra, 39 Conn. Sup. 132. Construing the facts alleged in the complaint in the light most favorable to the plaintiff, the Court finds that the plaintiff has pleaded sufficient facts to support a CUTPA claim. Shawmut's motion to strike the fourth count of the plaintiff's second revised complaint is therefore denied.
Count Five: Denial of Due Process under 42 U.S.C. § 1983,1985(3), 1986 and 1988
In count five, the plaintiff alleges that Shawmut, as an agent of the Probate Court and acting under color of state law, deprived him of his due process rights pursuant to 42 U.S.C. § 1983,1985(3), 1986 and 1988. The defendant moves to strike this count on the grounds that the defendant, as the plaintiff's conservator, was not a state actor and did not act "under color of state law." The Court finds Shawmut's claim to be persuasive.
The plaintiff correctly contends that "[t]he Probate Court is under an affirmative duty to protect the assets of an incompetent's estate. The court, and not the conservator is primarily entrusted with the care and management of the ward's estate, and, in many respects, the conservator is but the agent of the court." (Citations omitted; emphasis in original; internal quotation marks omitted.) Marcus' Appeal from Probate, 199 Conn. 524, CT Page 8860 529, 509 A.2d 1 (1986). See also Elmendorf v. Poprocki,155 Conn. 115, 118, 120, 230 A.2d 1 (1967).
Nevertheless, Darlow has not cited any persuasive authority that supports his claim that a conservator's independent acts may constitute state action for the purposes of a denial of due process claim. Indeed, in Diviney v. Smith, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 287011 (February 26, 1992, Katz, J.), the Court held that an administrator appointed by the Probate Court is not a state actor for purposes of a denial of due process claim. Citing to FlaggBrothers, Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729 (1978), andTulsa Professional Collection Services v. Pope, 485 U.S. 478,108 S.Ct. 1340 (1988), the court explained that mere state statutory authorization for a particular conduct or action does not convert that action or conduct into "state action" for purposes of the due process clause.
Therefore, in light of a lack of clear authority supporting the plaintiff's proposition that a conservator is a state actor for the purposes of a denial of due process claim and the well-reasoned decision in Diviney v. Smith, supra, the defendant's motion to strike the fifth count of the plaintiff's second revised complaint is granted.
Count Nine: Interference with Business Expectancy
Darlow alleges that Shawmut unlawfully interfered with his business expectancy by not discovering that the plaintiff had regained the capacity to manage his business affairs, by not moving the court to remove the conservatorship, and by restricting the plaintiff's access to his own assets with which to start a new business. The defendant contends that it was acting as conservator pursuant to a lawful Probate Court order until February, 1994, and was required "to manage the plaintiff's business affairs and to exercise its independent judgment in so managing." (Defendant's Memorandum in Support of Motion to Strike, page 20.)
To prove a cause of action for interference with business expectancy, a plaintiff must demonstrate that the defendant's conduct was "tortious." Kelley Property Development, Inc. v.Lebanon, 226 Conn. 314, 340-41 n. 30, 627 A.2d 909 (1993). That is, the plaintiff must show that "the defense was guilty by fraud, misrepresentation, intimidation or molestation. . . or CT Page 8861 that the defendant acted maliciously . . . [The cause of action] requires the plaintiff to plead and prove at least some improper motive or improper means." (Citations omitted; internal quotation marks omitted.) Id. Construing the facts alleged in the complaint in the light most favorable to the plaintiff, the Court concludes that the plaintiff has sufficiently alleged "some improper motive or improper means" to survive a motion to strike. Accordingly, the defendant's motion to strike count nine of the plaintiff's second revised complaint is denied.
Douglas S. Lavine Judge, Superior Court