[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM ON MOTION FOR SUMMARY JUDGMENT #109 AND CROSS-MOTION FOR SUMMARY JUDGMENT #111 CT Page 13074
In this probate appeal, the plaintiff, the State of Connecticut Department of Social Services, seeks to vacate and set aside a Probate Court decree that permitted the defendant, conservatrix of the estate of an incapable, to establish an irrevocable inter-vivos trust for the benefit of the ward and to fund the trust with the net proceeds recovered in settlement of a medical malpractice action asserted on the ward's behalf.
The following facts are undisputed. The ward, James A. Saunders III, is an incapable person who resides in Newtown, Connecticut. Saunders has been disabled and mentally incompetent since he suffered a traumatic brain injury in an automobile accident in 1983. On May 10, 1993, Edith A. Saunders (hereinafter the conservatrix") was appointed the conservatrix of the estate of Saunders by decree of the Probate Court of the District of Newtown. The cost of Saunders' medical care, support and institutionalization has been paid for by federal and state medical assistance programs under 42 U.S.C. § 1396a et seq. and General Statutes § 17b-260 et seq., known as Title XIX Medicaid (hereinafter "Medicaid"). Medicaid is administered in Connecticut by the State of Connecticut Department of Social Services (hereinafter "the state") pursuant to General Statutes § 17b-260 et seq.
On July 17, 1989, while a resident at a rehabilitation facility in New Hampshire, Saunders fell down a flight of stairs. This fall, and the subsequent course of medical treatment, rendered Saunders quadriplegic. As a result of Saunders' fall and subsequent medical treatment, the conservatrix instituted a lawsuit on Saunders' behalf, which suit ended in a settlement of $1,800,000 paid to Saunders' estate.
At some point after the settlement, pursuant to General Statutes § 45a-151, the conservatrix petitioned the Probate Court for the District of Newtown for authority to establish an irrevocable inter-vivos trust for the benefit of the ward to be funded with the settlement proceeds under General Statutes §45a-655(e) and 42 U.S.C. § 1396p (d) (4) (A). The petition proposed that the net proceeds of the settlement would be transferred to the conservatrix as trustee for the trust, which trust would provide for Saunders' supplemental needs during his lifetime. The state was named the remainderman of the trust CT Page 13075 estate upon Saunders' death. The terms of the proposed trust were drafted in conformity with the specifications of 42 U.S.C. § 1396p
(d) (4) (A) (hereinafter, "special needs trust") in an attempt to ensure that the value of the trust would not be considered an available resource for the purpose of determining ongoing Medicaid eligibility and would not adversely affect the ward's eligibility to continue receiving Medicaid benefits. The state objected to the establishment of the trust and the transfer of the ward's assets to the trustee on the ground that the Probate Court lacked jurisdiction to allow such a transfer by the conservatrix.
By decree dated April 25, 1995, the Probate Court approved the petition and authorized the conservatrix to establish and fund the special needs trust with certain conditions. In approving the trust, the Probate Court concluded that "the Federal Statute permits the creation of a trust for the benefit of a medicaid recipient without disqualifying him from the eligibility to continue to receive services under Title XIX, provided that he is under the age of 65 years, disabled and the trust meets criteria cited in the Federal Statutes. . . ." and that "the statutes of the State of Connecticut do not prohibit such a trust and if they did the Federal statutes would preempt state law."
Subsequently, the state appealed the decree to this court pursuant to General Statutes § 45a-186[1] claiming that the Probate Court did not have authority under state law to approve the establishment and funding of the trust with the settlement proceeds. On September 13, 1996, the defendant conservatrix moved for summary judgment on the ground that there are no material facts in dispute and that the defendant is entitled to judgment as a matter of law. On December 3, 1996, the state cross-moved for summary judgment, agreeing that there are no material facts in dispute but asserting that it is entitled to judgment as a matter of law.
As both parties have conceded that no material issues of fact are in dispute, the central issue in this matter is whether the probate court had the power and authority to approve and create the inter vivos trust at issue. If the probate court had the authority to approve and create the trust, then an additional issue arises as to whether, under federal and state law, the conservator of an estate of an incapable person receiving Medicaid assistance can establish an irrevocable inter-vivos CT Page 13076 trust to provide for the special needs of the ward.
The conservatrix argues that the probate court had the power to create, or approve the trust created, based on the historical power the sovereign has had over incompetents and their estates. The conservatrix argues that this historically pervasive power has been transferred to the probate courts in the form of General Statutes § 45a-98 (a) (6), which states in pertinent part that courts of probate shall have the power to "make any lawful orders or decrees to carry into effect the power and the jurisdiction conferred upon them by the laws of this state." The conservatrix argues that the statutes relating to incapables and conservators do not enumerate in detail what probate courts can and cannot do in the exercise of their jurisdiction, but rather probate courts are granted broad powers to be exercised with due regard to the best interests of the ward. The conservatrix asserts that it has been recognized from early on that probate courts have the fullest equitable powers to do complete justice in all matters over which they have jurisdiction; since parties to probate matters have no direct recourse to a court of equity, courts of probate must have equitable powers to do justice for all parties and to afford complete relief.
The conservatrix contends that the probate court had the authority to exercise its equitable powers pursuant to § 45-98 (a) (6), because the matter of the inter-vivos trust was before the probate court as part of the application to compromise and settle Saunders' third party malpractice claim as required by General Statutes § 45a-151. The conservatrix further contends that pursuant to General Statutes § 45a-655, the probate court has the power to manage a ward's estate for the ward's best interests. The conservatrix argues that the doctrine of substituted judgment found at § 45a-655 (e), which allows a conservator to take action that the ward would have taken in planning his estate had he been a sane and reasonably prudent person, authorizes her actions in the absence of express statutory authority. From these statutory powers, the conservatrix argues, arise implied or incidental powers to be exercised consistently with the broad statutory purpose and the best interests of the ward. In turn, the creation of the trust is within the equitable powers of the probate court.
The state argues that the probate court had no authority to authorize the creation of the trust, because such authorization is not provided within its limited statutory powers. The state CT Page 13077 recognizes that the probate court has occasion to exercise powers of equity, but argues that its limited equitable powers may be used only in conjunction with a statutory power. The state argues that the conservatrix, pursuant to General Statutes § 45a-655
(a), has a duty to manage the ward's estate and apply income and if necessary principal to support the ward. The state further argues that when the incompetent individual is a recipient of assistance, the conservatrix, pursuant to General Statutes §45a-655 (d), is required to apply assets exceeding limits on assets set by statute or regulations adopted by the commissioner of social services towards the cost and care of the incompetent. In addition, the state argues that the transfer of funds to the trust does not justisfy the criteria of General Statutes §45a-655 (e), regarding gifts made out of the estate of the ward. In sum, because the trust agreement in question specifically attempts to avoid the conservatrix's statutory obligations, the probate court lacked authority to authorize the transfer.
The state next argues that the doctrine of substituted judgment has been adopted only to a limited extent by the legislature, as codified under General Statutes § 45a-655
(e). The state argues that the conservatrix's contention that § 45a-655 (e) may be applied to the present case, despite the express language of the statute prohibiting gifts which deplete the ward's estate so as to qualify for medicaid benefits, violates the rules of statutory construction.
In addition, the state argues that the conservatrix's argument that the authority to establish and fund the trust is incidental or implied from the express statutory grant of authority is erroneous. The state again argues that the conservatrix has a statutory duty to marshall the ward's assets and use them for the support of the ward; where the ward is a recipient of medical assistance, the conservatrix is specifically directed to apply assets in excess of the applicable Medicaid eligibility limit for the ward's care. The state argues that it is not necessary for the conservatrix to have the incidental or implied authority to divest the ward's estate by transferring the funds to an inter vivos trust, and that such a transfer is in direct contradiction of the conservatrix's statutory responsibility to spend the ward's assets for his care until the applicable Medicaid resource eligibility limit is met.
Finally, the state argues that a proposed amendment to General Statutes § 45a-655, which would have authorized the CT Page 13078 conservatrix to establish a trust, was rejected by the General Assembly. The state also argues that the creation of the trust is in contravention of General Statutes § 17b-85, which requires the consent of the commissioner, which consent was not given.
In response, the conservatrix argues that the transfer of funds into the trust is not a gift to a third party, but is a means by which the conservatrix may preserve the assets of the ward, thereby upholding her statutory duties. The conservatrix also argues that there were many reasons why the proposed bill which would have allowed conservators to create trusts for incompetents failed to become a law, and that no authoritative reason was given for the bill's failure.[2]
"Our courts of probate have a limited jurisdiction and can exercise only such powers as are conferred on them by statute.Heiser v. Morgan Guaranty Trust Co., 150 Conn. 563, 565,192 A.2d 44 (1963). "It is a familiar principle that a court which exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." State v. Gordon, 45 Conn. App. 490, 495, (1997). "The Superior Court, in turn, in passing on an appeal, acts as a court of probate with the same powers and subject to the same limitations." Heiser v. Morgan GuaranteeTrust Co., supra, 150 Conn. 565. "In acting on an appeal from probate, the Superior Court does not exercise the jurisdictional powers vested in it by the constitution but, instead, exercises a special and limited jurisdiction conferred on it by the statutes." Id., 565-66.
"A Probate Court judge is not a chancellor. His only equity powers are those which are incidental to, and connected with, the settlement of a particular estate." Palmer v. Hartford NationalBank Trust Co., 160 Conn. 415, 429, 279 A.2d 726 (1971). "[T]he equity which the Probate Court administers must grow out of and be inseparably connected with the matter the court is acting upon." Id. "The situation, therefore, in which the Probate Court may exercise equitable jurisdiction must be one which arises within the framework of a matter already before it, and wherein the application of equity is but a necessary step in the direction of the final determination of the entire matter." Id., 430. "[W]e should not imbue a court with jurisdiction where its own limitations prevent it from going forward." Id. Moreover, "[t]he Probate Court may not adjudicate complex legal questions CT Page 13079 which are subject to the broad jurisdiction of a general court of equity." Id.
The conservatrix has argued that the matter of the inter-vivos trust was before the probate court as part of the application to compromise and settle the third party claim pursuant to General Statutes § 45a-151, and therefore the probate court could exercise its equity powers under General Statutes § 45a-98 (a) (6). The probate court's implied powers under § 45a-98 (a) (6) are limited to orders necessary to carry out its statutory functions. In The Matter of Reisman,
Superior Court, Probate Court, judicial district of West Hartford (December 19, 1995) (Berman, J.). The conservatrix argues that the creation of the trust is incidental to § 45a-151. Section 45a-151 (formerly § 45-231) states: "(a) Upon application by executors, guardians, conservators, administrators, trustees in insolvency and trustees appointed, or whose appointment has been approved, by the Court of Probate, the court may, after public notice and hearing, authorize such fiduciaries to compromise and settle any doubtful or disputed claims or actions, or any appeal from probate in favor of or against the estates or persons represented by them. (b) In order to accomplish such compromise or settlement, the court may authorize the conveyance, with or without requiring a bond, of the whole or any part of, or any easement or other interest in, any real property situated in this state forming part of the trust estate or owned by any such trustee, executor or administrator or owned by any deceased person, ward or incapable person for whom such an executor, guardian, conservator or administrator was appointed."
The statute is "broad enough to authorize the Court of Probate to approve a compromise settlement of all disputes between all parties in interest. . . ." Adams v. Link,145 Conn. 634, 642, 145 A.2d 753 (1958). "One of the main purposes of this provision is to protect a fiduciary in setting a disputed claim by enabling him to have his action approved in advance instead of leaving the matter to be determined when he presents his account for allowance." Griffin v. Sturges, 131 Conn. 471, 480,40 A.2d 758 (1944). "[E]xecutors and administrators do not lack power to make such compromises without court authority" but they "may do so at the risk of being charged with any loss involved. . . . The purpose of the statute is to enable them to obviate this contingency by obtaining approval in advance." Mark's Appeal,116 Conn. 58, 66, 163 A. 600 (1932). "Clearly, Section [45a-151] indicates that a probate court may only authorize the fiduciary CT Page 13080 to settle a disputed claim. The statute does not permit the probate court itself to resolve or settle the dispute."Commissioner v. Estate of Centeno, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 267115,3 CONN. L. RPTR. 737 (January 30, 1991) (Nigro, J.).
The conservatrix may not rely upon § 45a-151 as the legal basis for the probate court to exercise its limited equitable powers, because § 45a-151 is inapplicable to the circumstances here. Approval of the settlement is sufficient to achieve the purpose of the statute — protecting the conservatrix from subsequent challenges of loss due to the settlement. The establishment of an inter-vivos trust is not related to this purpose. Thus, the probate court was not authorized to act as it did under § 45a-151. As a result, the probate court could not exercise its equitable powers under § 45a-98 (a) (6) based on § 45a-151.
The conservatrix also argues that the probate court was acting pursuant to its power to manage Saunders' estate, as provided in General Statutes § 45a-655. In describing the duties of a conservator of the estate, § 45a-655 (a) provides that "[t]he conservator shall manage all the estate and apply so much of the net income thereof, and, if necessary, any part of the principal of the property, which is required to support the ward . . . and to pay his debts." "The court, and not theconservator, is primarily entrusted with the care and management of the ward's estate, and, in many respects, the conservator is but the agent of the court. (Internal quotation marks omitted.)Marcus' Appeal from Probate, 199 Conn. 524, 529, 509 A.2d 1
(1986). "Under our law, it is clear that the conservator acts under the supervision and control of the Probate Court in the care and management of the ward's estate." Id. "It is equally clear that the Probate Court is without jurisdiction to approve of any acts by the conservator unless those acts are authorized by statute." Id.
Section 45a-655 is not applicable here, because the conservator did not seek approval from the probate court for acts authorized by statute. The conservatrix does not attempt to argue that the probate court exercised a statutory grant of power pursuant to § 45a-655, but rather contends that pursuant to the statutory obligation of probate courts to manage a ward's estate under § 45a-655, the probate court is vested with implied or incidental powers which are to be exercised CT Page 13081 consistently with the broad statutory purpose and the best interests of the ward. Thus, the conservatrix argues that the trust furthers the best interests of the ward and could be created by the probate court through its powers incidental to implementing the duties of the conservator. The incidental and implied powers that the conservatrix refers to are comparable to equitable powers, which can be exercised by the probate court only when necessary to carry out statutory duties. Palmer v.Hartford National Bank Trust Co., supra, 160 Conn. 429
(exercise of equity powers must be necessary and inseparable from matter before the probate court). The creation of the trust was not necessary to the duties of the probate court under §45a-655.[3] Thus, in the absence of a statutory power carried out pursuant to § 45a-655, the probate court could not exercise implied or incidental powers to authorize the creation of the trust pursuant to § 45a-655.
Finally, the conservatrix has argued that in American BibleSociety v. Wetmore, 17 Conn. 181 (1845), the Connecticut Supreme Court recognized the power of the probate court to impose a trust through its equitable powers. American Bible stands for the limited proposition that a misdescription of a charitable remainderman, now called a latent ambiguity, may be cured through parol evidence.[4] Schulman v. Connecticut Bank and Trust,5 Conn. App. 561, 568-69, 503 A.2d 759 (1985). See also Sadler v.Sadler,; 107 Conn. 409, 415, 140 A. 639 (1928) (an obvious mistake by the testator, such as giving a name incorrectly, has never been permitted to defeat the intent when it is ascertained). Moreover, as recognized by the court in AmericanBible, the probate court must first act pursuant to a statutory grant of power before applying equity to a case. Absent the statutory grant of power, the probate court may not act at all. Since there was no statutory basis for the probate court's order creating the trust, the probate court could not exercise its equitable powers to establish the trust.
The state's cross-motion for summary judgment is granted, because the order of the probate court authorizing the creation of the inter-vivos trust was null and void for lack of jurisdiction. Hospital Administrator v. Anonymous,35 Conn. Sup. 241, 244, 406 A.2d 871 (1979). In addition, for the foregoing reasons, the appeal is sustained. Cf. State v. Gordon, supra,45 Conn. App. 493 (where probate court lacked jurisdiction to enter order, appeal was sustained). CT Page 13082
STODOLINK, JUDGE